In re ST. JOHNS HOME HEALTH
AGENCY, INC., Debtor.

Bankruptcy No. 94–13447–BKC–RAM.

United States Bankruptcy Court,
S.D. Florida.

Sept. 23, 1994.

Mark Bloom, Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A., Miami, FL, for debtor.

Samuel R. Maizel, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Washington, DC, for U.S. Dept. of Justice.

Grisel Alonso, Office of U.S. Atty., Miami, FL, for U.S. Attorney's Office.

Paul S. Singerman, Stroock & Stroock & Lavan, Miami, FL, for Unsecured Creditors Committee.

Sheridan Weissenborn, Papy & Weissenborn, P.A., Coral Gables, FL, for Warren E. Silverman, C.P.A.

Amber Donner, Office of U.S. Trustee, Miami, FL.

## MEMORANDUM OPINION

ROBERT A. MARK, Bankruptcy Judge.

**THIS CAUSE** came before the Court on the emergency motion of the Debtor, St. Johns Home Health Agency, Inc. ("St. Johns" or "Debtor") for authority to assume, as an executory contract, its Provider Agreement with the Secretary of the United States Department of Health, Education and Welfare, now known as the United States Department of Health and Human Services ("HHS") pursuant to 11 U.S.C. § 365. The issue the Court must decide is whether it has jurisdiction to hear and determine the matters presented by St. Johns' motion, and if so, whether it has power to grant effective relief in light of the contractual relationship between St. Johns and HHS, and the statutory and administrative scheme imposed by the Medicare Program.

## BACKGROUND

### A. The Medicare Program

St. Johns is a health care provider which receives reimbursement for home health services provided to Medicare beneficiaries through Part A of the Health Insurance for the Aged and Disabled Program, 42 U.S.C. §§ 1395 *et seq.* ("Medicare Program"). The Secretary of HHS, Donna Shalala ("Secretary"), has delegated her responsibility for administering the Medicare Program to the Health Care Financing Administration ("HCFA").

Providers of Medicare services must meet the statutory criteria and enter into Health Insurance Benefit Agreements ("Provider Agreements") with the Secretary pursuant to 42 U.S.C. § 1395cc. HCFA may not reimburse a provider unless it executes a Provider Agreement. Providers like St. Johns are then reimbursed by Medicare for services on the basis of reasonable costs which are defined in the federal regulations. 42 C.F.R. § 413.1 *et seq.*

HCFA contracts with private insurance companies that act as fiscal intermediaries in order to determine reasonable costs and make reimbursements to participating providers. 42 U.S.C. §§ 1395h, 1395u. The reasonable cost methodology provides for initial payments on an estimated basis, with an eventual reconciliation that determines proper payment amounts. Under this system, providers like St. Johns file a claim for a service provided to a Medicare beneficiary and the fiscal intermediary pays the claim prior to further evaluation. Providers generally are reimbursed on an estimated (periodic interim payment or "PIP") basis. 42 C.F.R. § 413.60. Fiscal intermediaries calculate

these estimated payments by projecting the services likely to be provided during a given fiscal year based on performance during past years. PIP payments thus are based on actual costs incurred by the provider in the previous accounting period, subject to various other adjustments.

The fiscal intermediary makes estimated payments throughout the year. These payments are then reconciled with the actual reasonable costs incurred by means of an annual cost report which the Medicare provider is required to submit three months after the end of its fiscal year. 42 C.F.R. §§ 413.20, 413.24. The fiscal intermediary adjusts these estimated payments during the fiscal year if it receives information that the compensation for the fiscal year will be excessive based upon the projected level of services, 42 C.F.R. § 413.64, or because of previous overpayment or underpayments, 42 U.S.C. § 1395g(a).

Audits of the annual cost reports determine the reimbursement due for services provided during that fiscal year and whether the provider was underpaid or overpaid for that level of services. If the provider was underpaid, the fiscal intermediary remits the difference. If the provider was overpaid, the fiscal intermediary notifies the provider of the overpayment and either makes arrangements for the provider to repay Medicare or adjusts ongoing payments to recover the prior overpayments. 42 U.S.C. § 1395g(a); 42 C.F.R. § 405.1803(c). A provider dissatisfied with the fiscal intermediary's determination may appeal, and, depending on the amount in controversy, receive a hearing before the fiscal intermediary or the Provider Reimbursement Review Board ("PRRB"). 42 U.S.C. § 1395oo(a). PRRB decisions are final, 42 U.S.C. § 1395oo(f), and may be appealed to the federal district court, 42 U.S.C. § 405(g).

Fiscal intermediaries must withhold payments on claims where there is reliable evidence of overpayment, either due to innocent mistake or to fraud or willful misrepresentation. 42 C.F.R. § 405.370–.373 Where the intermediary has reliable evidence that the circumstances giving rise to the need for a suspension of payments involve fraud or willful misrepresentation, it may suspend payments without prior notice to the provider. 42 C.F.R. § 405.371(b). If payments are suspended due to suspected fraud or misrepresentation, a provider must await a final determination by the Secretary that the provider should be excluded from the Medicare Program before it can seek an opportunity to appear before an agency official for hearing pursuant to 42 U.S.C. § 405(b) and subsequent judicial review under 42 U.S.C. § 405(g). In the meantime, the provider may continue to submit claims, which are processed and allowable amounts credited to the provider's account. At the conclusion of the investigation, withheld funds are released to the provider if there is no determination of fraud or misrepresentation.

Furthermore, pursuant to 42 U.S.C. § 405(h),

The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 of title 28, United States Code, to recover on any claim arising under this title.

## B. Facts of the Case

St. Johns is a Medicare certified home health agency with its principal place of business in Miami Lakes, Florida. St. Johns entered into a Provider Agreement on March 19, 1976, with the Secretary of the Department of Health, Education and Welfare, predecessor to the HHS. Pursuant to the Provider Agreement, St. Johns provided home health care services to Medicare eligible patients under the procedures described above. Aetna Life Insurance Company ("Aetna") is the fiscal intermediary for St. Johns. St. Johns derives more than 99% of its revenues from reimbursements under Part A of the Medicare Program.

On August 16, 1994, Aetna notified St. Johns that it would no longer be paid through the PIP method of reimbursement and began to withhold 75% of claims pay-

ments to St. Johns. Aetna's notice stated that this action was based on HCFA's determination that fraud or misrepresentation was suspected in St. Johns' billing procedures, and in order to recover alleged overpayments due for fiscal year 1993 and earlier fiscal years. The notice further stated that the preliminary result of an audit conducted by the Office of Inspector General and the Office of Audit Services of HHS estimated an overpayment to St. Johns of approximately $11,657,059 resulting from an alleged overstatement of Medicare visits for the fiscal year ended June 30, 1993, by approximately 35%. HCFA's investigation and audit into St. Johns' billing practices was still ongoing as of the date of argument on St. Johns' motion.

On August 23, 1994, St. Johns filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. St. Johns continues in the management and operation of its business as debtor-in-possession, and has continued to operate under the Provider Agreement with HHS. The fiscal intermediary, at HCFA's instruction, has continued to withhold 75% of St. Johns' postpetition Medicare reimbursements. St. Johns denies any failure to comply with the Provider Agreement, and in fact argues that it is owed money by HCFA for reimbursements due under the Provider Agreement.

St. Johns has not argued that HCFA's withholding of postpetition reimbursements violates the automatic stay provided by 11 U.S.C. § 362 nor has it expressly sought to enjoin the withholding. This Court previously has ruled in an unpublished opinion that the United States' withholding of Medicare Part A reimbursement is within its statutory and common law right of recoupment, and is not subject to the automatic stay nor appropriately enjoined under 11 U.S.C. § 105. *Mederi of Dade County v. Aetna Life Ins. Co. (In re Mederi of Dade County)*, Case No. 94–11437–BKC–RAM, Adv. No. 94–0370–BKC–RAM–A (Bankr. S.D.Fla., May 23, 1994). Although St. Johns has expressed its disagreement, it has not challenged that holding.

Instead, St. Johns seeks to establish another mechanism for relief by moving to assume the Provider Agreement as an executory contract under 11 U.S.C. § 365. Pursuant to that motion, St. Johns asks that this Court determine, at least on a "provisional" basis, the amount of existing defaults under the Provider Agreement for purposes of curing defaults under 11 U.S.C. § 365(b)(1). St. Johns' acknowledged goal in seeking this relief is to obtain a ruling from this Court finding that the overpayment subject to recovery is far less than the $11,657,059 estimated by the preliminary audit. If the amount determined by the Court is less than the amount already withheld by Aetna, the result St. Johns seeks is for this Court's "cure" determination to cause HCFA and Aetna to stop withholding postpetition reimbursement payments.

The United States, on behalf of the Secretary and HCFA, responds that St. Johns has not adequately proposed a means of curing existing defaults or providing adequate assurance of future performance under 11 U.S.C. § 365, and more significantly, that this Court does not have jurisdiction over HCFA's calculation of amounts owed under the Medicare Program or recovery of overpayments made pursuant thereto until a provider has exhausted its administrative remedies, pursuant to 42 U.S.C. § 405(h).

The threshold issue of jurisdiction was brought into focus by a motion for expedited discovery filed by St. Johns which was heard on August 30, 1994. The United States responded to the motion by raising the question of this Court's jurisdiction to determine the amount of "cure" required for St. Johns to assume the Provider Agreement. The Court requested memoranda on the jurisdictional issue and set a further hearing on September 7, 1994. The Court has considered the pleadings and papers submitted by the parties, the arguments of counsel for the Debtor, counsel for the United States, and counsel for the Committee of Unsecured Creditors at the September 7, 1994 hearing, and relevant authorities. The Court concludes that it does not have jurisdiction to hear and determine the issues of the amount and method of recovery of alleged HCFA overpayments until St. Johns exhausts its administrative remedies. Even if this Court

had such jurisdiction, it cannot grant effective relief to St. Johns under 11 U.S.C. § 365 without fundamentally and impermissibly altering the contractual relationship between St. Johns and the Secretary which incorporates the statutory and administrative scheme imposed by the Medicare Program. Accordingly, St. Johns' motion for authority to assume the Provider Agreement is denied.

## DISCUSSION

### A. Jurisdiction to Determine Amount of Default and Method of Recoupment

At the heart of the jurisdictional dispute here is the intersection of 28 U.S.C. § 1334, on the one hand, and 42 U.S.C. § 405(h) on the other. 28 U.S.C. § 1334 gives the district courts, and thus the bankruptcy courts, original and exclusive jurisdiction of all cases under title 11, exclusive jurisdiction over all property of the debtor as of the commencement of the case and of property of the estate, and original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11. 42 U.S.C. § 405(h), however, precludes judicial review of findings or decisions by the Secretary except as provided in that section. In addition, the third sentence of 42 U.S.C. § 405(h) expressly bars actions under 28 U.S.C. § 1331 (federal question jurisdiction) or § 1346 (United States as defendant) "to recover on any claim" arising under the Medicare Program.

St. Johns argues that neither this sentence nor 42 U.S.C. § 405(h) in its entirety preclude jurisdiction under 28 U.S.C. § 1334, which provides an independent basis for bankruptcy court jurisdiction, citing *In re University Medical Center*, 973 F.2d 1065 (3d Cir.1992) and *In re Town & Country Home Nursing Services, Inc.*, 963 F.2d 1146 (9th Cir.1991). The United States responds that St. Johns cannot obtain judicial review of HCFA's determination of prior overpayments or its decision to withhold reimburse-

ment until St. Johns has exhausted administrative remedies pursuant to 42 U.S.C. § 405(h). The United States further contends that the absence of specific reference to § 1334 in the present version of 42 U.S.C. § 405(h) is due merely to an inadvertent omission in a technical amendment that intended no substantive change to the statute or its effect of precluding § 1334 jurisdiction, citing *In re Upsher Laboratories, Inc.*, 135 B.R. 117 (Bankr.W.D.Mo.1991) and *Bodimetric Health Services, Inc. v. Aetna Life & Casualty Co.*, 903 F.2d 480 (7th Cir.), *cert. denied* 498 U.S. 1012, 111 S.Ct. 579, 112 L.Ed.2d 584 (1990).

St. Johns' assertion of independent bankruptcy court jurisdiction is premised on the fact that its § 365 motion to assume an executory contract is a "core" proceeding within this Court's jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. Thus, it argues, this Court has jurisdiction to consider and rule upon all matters presented by the motion notwithstanding 42 U.S.C. § 405(h), including the amount of HCFA overpayments under the Provider Agreement which St. Johns would have to cure in order to assume the contract.

■ St. Johns is correct that 42 U.S.C. § 405(h) does not divest this Court of subject matter jurisdiction to consider a request for authority to assume the Provider Agreement.[1] However, jurisdiction to consider St. Johns' motion does not necessarily convey jurisdiction to resolve the primary dispute between the parties—namely, the amount of prepetition overpayments, and the manner in which HCFA may recoup them. Part and parcel of St. Johns' motion is its request that this Court make a determination of the amount of prepetition overpayments that St. Johns would have to cure in order to assume the Provider Agreement.

■ For this Court to make such a determination prior to St. Johns' exhaustion of its administrative remedies, as provided by

---

1. This Court concludes, as have most that address the issue, that the Provider Agreement is an executory contract subject to assumption or rejection by a debtor-in-possession. *See University Medical Center*, 973 F.2d at 1075, n. 13; *In re*

*Advanced Professional Home Health Care Inc.*, 94 B.R. 95 (E.D.Mich.1988); *Matter of Visiting Nurse Ass'n of Tampa Bay, Inc.*, 121 B.R. 114 (Bankr.M.D.Fla.1990).

statute and regulation, would be in contravention of 42 U.S.C. § 405(h). The second sentence of § 405(h) requires that administrative appeal processes be exhausted before this Court or any other tribunal may review a finding or decision of the Secretary. *See Matter of Visiting Nurse Ass'n of Tampa Bay, Inc.*, 121 B.R. 114 (Bankr.M.D.Fla.1990) ("overwhelming consensus" is that federal courts do not have jurisdiction to hear challenges between providers and the Secretary or review board without an exhaustion of administrative remedies). The determination that St. Johns has been overpaid for fiscal year 1993 and earlier, the amount of such overpayments, and the manner of HCFA's recovery of those overpayments, are all matters that are subject to administrative appeal, and this Court cannot consider those matters until St. Johns' administrative remedies are exhausted. The filing of a bankruptcy petition does not and should not create a shortcut to judicial review of administrative decisions otherwise subject to exhaustion requirements.

St. Johns argues that a "cure" determination for § 365 purposes could be deemed "provisional," without prejudice to or collateral estoppel effect on an administrative determination and review as provided in the Medicare statutes and regulations. This concession purports to preserve the integrity of the Medicare regulatory scheme by allowing the review process to proceed. The flaw in St. Johns' argument is that this "provisional" overpayment calculation would substantially impact upon the HCFA and restrict its ability to enforce its statutory recoupment remedies.

Specifically, the necessary corollary of the relief St. Johns seeks is that HCFA's withholding of postpetition reimbursement would be limited to the amount needed to cure the default as determined by this Court rather than the amount determined by HCFA. This limitation, which would require injunctive relief to enforce, would continue until the administrative review and appeal process is completed. Thus, for this Court to grant this provisional relief would circumvent the established procedures for determination and recoupment of Medicare overpayments and administrative review of such determinations, as set out in elaborate detail in the Medicare Program.

In sum, this Court finds that judicial review of HCFA or the fiscal intermediary's actions before St. Johns completes the Medicare Program's administrative appeal process would violate the second sentence of 42 U.S.C. § 405(h), which precludes judicial review of the Secretary's decisions prior to exhaustion of administrative remedies.

St. Johns contends that the requirement of exhaustion of administrative remedies does not apply in this case because there is no administrative process that allows immediate appeal of the preliminary determination of overpayment and HCFA withholding of reimbursement in this case. St. Johns asserts that, under the Medicare statutes, it cannot seek administrative review of the withholding until the fiscal intermediary's cost report audits are completed and a final audit report is issued, resulting in a Notice of Program Reimbursement ("NPR") pursuant to which the Secretary seeks repayment for prior overpayments. Accordingly, St. Johns argues, because there is no present avenue for administrative review of HCFA's preliminary actions, St. Johns should be able to bring its reimbursement dispute before this Court now.

■ In effect, St. Johns is arguing that where the Medicare statutes and regulations permit the more drastic action of HCFA suspension of payments prior to notice and hearing due to suspicion of fraud or misrepresentation in prior overpayments, the provider is thereby entitled to immediate judicial review of the non-final administrative determination, while in other situations the provider must first comply with administrative exhaustion requirements. This argument is flawed, both logically and legally. *See Neurological Associates v. Bowen*, 658 F.Supp. 468 (S.D.Fla.1987) (no right to immediate judicial review of Secretary's temporary, non-final withholding of Medicare Part B payments due to evidence of fraud or misrepresentation pursuant to 42 C.F.R. § 405.371(b)). Moreover, St. Johns does have an administrative remedy under the Medicare Program upon the issuance of an

NPR; the possibility that its administrative remedy may not provide relief as quickly as St. Johns desires, or indeed may require to survive, is one of the potentially unfortunate consequences of doing business in a heavily regulated field where compensation is highly dependent upon administrative processes. *See V.N.A. of Greater Tift County v. Heckler,* 711 F.2d 1020, 1034 (11th Cir.1983), *cert. denied* 466 U.S. 936, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984) (providers which choose to operate within the Medicare system on a cash-poor basis take a knowing risk that an intermediary's determination might delay payment, and their risk of being forced out of business alone does not justify a fundamental deviation from the statutory scheme).

■ The Court has also considered whether the third sentence of § 405(h) operates to preclude all jurisdiction under 28 U.S.C. § 1334 over the issues presented by St. Johns. After a detailed review of the legislative history, the Court concludes that any exercise of jurisdiction pursuant to § 1334 over a claim arising under the Medicare Program is in fact precluded by § 405(h).

The third sentence of 42 U.S.C. § 405(h), as originally drafted, specifically barred bankruptcy jurisdiction by prohibiting any action under "section 24 of the Judicial Code of the United States," which section (codified at 28 U.S.C. § 41) contained virtually all of the jurisdictional grants to the district courts including bankruptcy jurisdiction. *See Amendments to Title II of the Social Security Act,* § 201, 53 Stat. 1362, 1371 (1939); Judicial Code of the United States, § 24, 36 Stat. 1093 (1911); *Upsher Laboratories,* 135 B.R. at 119. In 1948, the Judicial Code was revised and the district court jurisdictional grants were put into separate sections. *See* Pub.L. No. 80-773, 62 Stat. 869, 930-35 (1948); *Upsher,* 135 B.R. at 119. Ultimately, in 1984 the legislature revised § 405(h) by striking out the "section 24" reference and inserting "section 1331 or 1346 of title 28, United States Code," Pub.L. 98-369, § 2663(a)(4)(D), 98 Stat. 1162 (1984); *Upsher,* 135 B.R. at 119.

The amending legislation expressly provided that "none of such amendments shall be construed as changing or affecting any right, liability, status, or interpretation which existed" under the amended provisions prior to enactment. Pub.L. 98-369, § 2664(b), 98 Stat. 1171-72 (1984). Thus, the omission of 28 U.S.C. § 1334 from the amended version of 42 U.S.C. § 405(h) was not meant to create bankruptcy jurisdiction where it previously was precluded. The intent and effect of the 1984 amendments are that bankruptcy court jurisdiction under § 1334 for claims arising under the Medicare Program is and remains precluded by § 405(h). *Upsher,* 135 B.R. at 119-20 (clear effect of amendment is that since district court could not take jurisdiction prior to exhaustion of administrative remedies by exercising bankruptcy jurisdiction prior to revision, it cannot do so after revision); *In re St. Mary Hospital,* 123 B.R. 14, 17 (E.D.Pa.1991) (bankruptcy actions were barred under prior version of § 405(h) and remain so today); *see also Bodimetric Health Services,* 903 F.2d at 489-90 (diversity jurisdiction of claim against fiscal intermediary under 28 U.S.C. § 1332 precluded by § 405(h) regardless of technical omission); *V.N.A. of Greater Tift County,* 711 F.2d at 1027, citing *United States v. Sanet,* 666 F.2d 1370 (11th Cir.1982) (in suit brought by government under 28 U.S.C. § 1345 to recover overpayments against provider who withdrew from program, permitting district court to decide merits of provider's substantive defense would impermissibly grant right of review to those who drop out of program unavailable to those who stay in).

■ The Supreme Court has dictated that the phrase "arising under" be construed broadly as including claims that are "inextricably intertwined" with benefits determinations, *Heckler v. Ringer,* 466 U.S. 602, 622-24, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984), and claims for which the "standing and substantive basis" arise under the Medicare Act, *Weinberger v. Salfi,* 422 U.S. 749, 760-61, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). The central target of § 405(h) preclusion is "any action envisioning recovery on any claim emanating from" the Medicare Act. *V.N.A. of Greater Tift County,* 711 F.2d at 1025 (citation omitted). St. Johns' request that this Court make a determination of the amount of HCFA overpayments, even on a

"provisional" basis, is inextricably intertwined with a benefits determination; accordingly, this Court's jurisdiction over that request is precluded by the third sentence of 42 U.S.C. § 405(h).

This Court's conclusion that it lacks jurisdiction to review HCFA's determination of the amount of overpayments or the propriety of recovery through withholding of reimbursement prior to exhaustion of administrative remedies is not directly in conflict with the Third Circuit Court of Appeals' conclusion in *University Medical Center*. In that case, a debtor provider brought an adversary proceeding seeking turnover of postpetition reimbursement withheld by HHS to recover for prepetition overpayments on the theory that the withholding violated the automatic stay.[2] The court expressly noted that "the parties stipulated both to the amounts of the overpayments ... and to the separate pursuit of any substantive dispute concerning these amounts through the normal administrative processes set forth in the Medicare statute." *University Medical Center*, 973 F.2d at 1073. Thus, the dispute over whether a violation of the automatic stay occurred was a claim arising under the Bankruptcy Code, not the Medicare statutes, and was not "inextricably intertwined" with the fiscal intermediary's reimbursement determination. Accordingly, the court concluded that a finding of jurisdiction did not impinge on the authority of the Secretary protected by § 405(h) and presented no danger of rendering the administrative review process superfluous. Here, St. Johns specifically wants this Court to determine the overpayment amount. At least until completion of the administrative appeal, this bankruptcy court finding would circumvent and supersede the administrative determination.

The other circuit court decision relief upon by St. Johns, the Ninth Circuit's decision in *Town & Country*, focused primarily on 11 U.S.C. § 106 sovereign immunity issues rather than the interrelation of 28 U.S.C. § 1334 jurisdiction and 42 U.S.C. § 405(h) preclusion. That court did not extensively analyze

§ 405(h), and did not address the effect on the Medicare Program of finding jurisdiction under 28 U.S.C. § 1334 to consider claims arising under the Medicare Act.

Moreover, to the extent that *University Medical Center* and *Town and Country* can be read as eliminating the requirement of compliance with the Medicare Program's reimbursement determination procedures on the basis of independent bankruptcy court jurisdiction under § 1334, *see Town & Country*, 963 F.2d at 1155, this Court simply disagrees. *Town & Country*'s suggestion that the general grant of bankruptcy court jurisdiction under § 1334 prevails "irrespective of congressional statements to the contrary in the context of other specialized litigation," *Id.* at 1155, citing 1 L. King, Collier on Bankruptcy, ¶ 3.01[1][c][ii]m at 3–22 (15th Ed.1991), reads § 1334 too expansively. *See Board of Governors of the Federal Reserve System v. MCorp Financial, Inc.*, 502 U.S. 32, 112 S.Ct. 459, 116 L.Ed.2d 358 (1991) (§ 1334 concurrent jurisdiction is not an appropriate basis for staying administrative proceedings; specific preclusive language regarding administrative powers is not qualified or superseded by general bankruptcy provisions).

At oral argument the Committee of Unsecured Creditors suggested that the effect of concluding that this Court does not have jurisdiction to hear disputes over the amount of HCFA overpayments and withholding of reimbursement is to deny Medicare-reimbursed health care providers the ability to seek bankruptcy relief, and that if such a result were intended, providers would have been excluded under 11 U.S.C. § 109. The Committee's argument overstates the effect of this ruling. Clearly, St. Johns is eligible to be a debtor under title 11, and as a debtor has the right to seek authority to assume an executory contract. A petition for relief under the Bankruptcy Code provides a debtor with numerous rights consistent with the policy of facilitating the survival and reorganization of businesses. Nevertheless, where, as here, the debtor's business is inextricably

---

**2.** As discussed earlier, this Court has rejected the conclusion reached in *University Medical Center* that withholding of postpetition reimbursement

violates § 362, and finds that it constitutes a valid exercise of a statutory or common law right of recoupment exempt from the automatic stay.

tied to its relationship with the HCFA and fiscal intermediary under the Medicare Program, the Bankruptcy Code does not provide rights or remedies that will circumvent the clear rights of HCFA under those statutory provisions. This Court holds that the filing of a bankruptcy petition does not confer upon a Medicare provider a right to immediate judicial review of Medicare overpayment determinations when that right is expressly denied outside of bankruptcy, and is precluded under the Medicare Act itself.

Thus, this Court concludes that while it has jurisdiction to consider St. Johns' motion for authority to assume the Provider Agreement, it is without jurisdiction to hear and determine issues integral to the motion. Specifically the Court cannot determine, even provisionally, the amount of HCFA overpayments to St. Johns and the method of recoupment of HCFA thereof by withholding of postpetition reimbursements, unless and until St. Johns exhausts its administrative remedies.

### B. Ability to Grant Effective Relief Under § 365

■ Even if this Court granted St. Johns' motion to assume and found that it had jurisdiction to make a "provisional" determination of the amount of prior HCFA overpayments, St. Johns' assumption of the Provider Agreement would provide no relief unless the Court also enjoined HCFA from enforcing its recoupment rights. A debtor seeking to assume an executory contract must accept its burdens as well as its benefits. *See Visiting Nurse Ass'n of Tampa Bay,* 121 B.R. at 119; *Advanced Professional Home Health Care,* 94 B.R. at 97 ("[A] debtor cannot continue to enjoy the fruits of an executory contract post-petition while ignoring its roots."). After assumption the debtor must perform "in full, just as if bankruptcy had not intervened." *In re Airlift Int'l, Inc.,* 761 F.2d 1503, 1508 (11th Cir.1985). One of the burdens of the Provider Agreement, and the statutory and regulatory scheme it is subject to, is that HCFA is entitled to withhold reimbursement on an ongoing basis in order to recover for previous overpayments, as determined by HCFA and subject to review only through the administrative process.

■ This Court has held that a debtor provider is subject to recoupment even prior to formal assumption of a Provider Agreement, at least where the debtor continues to operate under the terms of the executory contract and seeks to receive its benefits. *Mederi of Dade County; see also In re Public Service Co. of New Hampshire,* 884 F.2d 11, 15 (1st Cir.1989); *In re Heafitz,* 85 B.R. 274, 279 (Bankr.S.D.N.Y.1988); *In re Mohawk Industries, Inc.,* 82 B.R. 174, 177 (Bankr.D.Mass.1987). Notwithstanding the split of authority over HCFA's pre-assumption rights, *see, e.g., University Medical Center,* there is little or no dispute that a consequence of assumption is the affirmation of the government's power to withhold postpetition reimbursement to recover prepetition overpayments. *University Medical Center,* 973 F.2d at 1075 ("[I]f UMC assumed its provider agreement, there is no question that HHS could withhold UMC's post-petition reimbursement in order to recover pre-petition overpayments without violating the automatic stay"); *see also Advanced Professional Home Health Care,* 94 B.R. at 97 (debtor could not assume provider agreement without right of secretary to recoup overpayments from subsequent reimbursements); *Visiting Nurse Ass'n of Tampa Bay,* 121 B.R. at 119 (debtor seeking to assume provider agreement and reject recoupment schedule agreement for repayment of prior overpayments is nonetheless bound by the doctrine of recoupment). Thus, assumption of the Provider Agreement undoubtedly would make St. Johns' postpetition reimbursements subject to withholding by HCFA pursuant to the statutory and regulatory scheme governing reimbursements.

St. Johns' goal is to stop or greatly reduce the amount of postpetition reimbursements withheld by HCFA. Its charted path to that goal is to characterize the prepetition overpayment determination as a § 365(b) cure determination which, if paid, would allow St. Johns to proceed under the terms of the Provider Agreement without further withholding. Unfortunately, the path is not that simple under the Provider Agreement and

the underlying Medicare statutes and regulations.

Actions by the Secretary or her delegates (1) determining that a provider has been overpaid; (2) determining that the overpayment should be recouped; and (3) determining the method of recoupment, are all decisions emanating from substantive and material powers granted to the Secretary under the Provider Agreement and Medicare Program. Thus, calling the overpayment determination St. Johns seeks here a "cure" determination under § 365 disguises the true import of the requested action. What St. Johns seeks is not just a § 365(b) cure determination; instead, it seeks and needs separate and significant injunctive relief prohibiting the Secretary from exercising her statutory right to withhold reimbursement based on her overpayment determination and determination of evidence of fraud or misrepresentation.

The Secretary's recoupment rights are directly linked to the Secretary's determination of overpayment or reliable evidence of fraud or misrepresentation. To grant St. Johns' request would require an order severing this link and instead limiting the recoupment right to this Court's determination of the prepetition overpayment. Understood in this context, the relief sought is not simply assumption with a provisional cure determination, but rather bankruptcy court intervention that would materially alter the rights of the parties under the Provider Agreement, and the statutes and regulations pursuant to which providers are reimbursed.

An injunction precluding HCFA from withholding in accordance with the Secretary's determination pending final administrative action would be much like the status quo injunction sought and denied in *V.N.A. of Greater Tift County.* Both injunctions would require the court to reach the merits of the Secretary's overpayment decision—in *Tift County,* to justify maintenance of the status quo; here, to make the requested cure determination under § 365(b). In *Tift County,* the Eleventh Circuit held that "[a] district court's action in granting a status quo injunction after a lengthy consideration of the merits must be deemed to be fundamentally at odds with the Medicare Act." 711 F.2d at 1032. The relief sought here, a cure determination and injunction prohibiting the Secretary from withholding based upon that determination, would equally run afoul of the Medicare Act.

Utilizing Chapter 11 and the provisions of 11 U.S.C. § 365 cannot mask the impermissible court intervention sought by St. Johns. Issuance of an injunction impairing the Secretary's right to withhold payments before the administrative process is concluded would be contrary to the Court's fundamental conclusion that the filing of a bankruptcy case does not provide remedies for a Medicare-reimbursed health care provider that alter the rights and remedies specifically and comprehensively set forth in the Medicare Program. Thus, authorizing assumption of the Provider Agreement will not provide meaningful relief to St. Johns without injunctive relief which this Court would not and could not grant.

### CONCLUSION

The Debtor in this case is a Medicare provider whose sole income is derived from its agreement with the Secretary to provide home health care services under the Medicare Program. Its rights to receive payments from the Secretary and the Secretary's rights to withhold payments are governed by a comprehensive set of statutes and regulations incorporated in the Provider Agreement. Because of action taken by the Secretary pursuant to the Medicare statutes and regulations, St. Johns is facing its demise. In an effort to survive, it has filed for relief under title 11 and sought bankruptcy court intervention which would, if granted, substantially impair the Secretary's ability to exercise her rights.

In denying St. Johns' motion to assume the Provider Agreement, the Court is not ignoring the right of a Medicare provider to seek protection under title 11 nor is it ignoring the broad grant of jurisdiction under 28 U.S.C. § 1334. These rights, and the jurisdictional grant of § 1334, do not supersede the language and policy embodied in 42 U.S.C. § 405(h) of the Medicare statute and the cases interpreting that section. Federal

courts lack jurisdiction to consider claims related to Medicare reimbursement prior to exhaustion of a provider's administrative remedies. The filing of a chapter 11 petition does not change that result.