**EXCEL HOME CARE, INC., Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, Defendant.**

No. CIV.A.03–CV–11767–GA.

United States District Court, D. Massachusetts.

Oct. 29, 2004.

Michael B. Feinman, Law Offices of Michael B. Feinman, Andover, MA, for Excel Home Care, Inc., Plaintiff.

***ORDER***

O'TOOLE, District Judge.

Order entered Order Adopting Report and Recommendation. No objection having been received, after review the Report and Recommendation is adopted. The motion to dismiss is Granted and the action is Dismissed.

***REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS (# 3)***

***I. INTRODUCTION***

COLLINGS, United States Magistrate Judge.

On September 15, 2003, Excel Home Care, Inc. ("Excel" or "plaintiff") filed a two-count complaint against the United States Department of Health and Human Services ("DHHS" or "defendant"). (# 1) In Count I the plaintiff alleges that by ignoring the terms and provisions of Excel's confirmed Chapter 11 Plan of Reorganization, DHHS breached its contractual obligations to Excel. (# 1, ¶¶ 16, 17) For the same reason DHHS is alleged to have violated the provisions of Title 11 U.S.C. § 1141(a) in Count II. (# 1, ¶¶ 18, 19)

In lieu of answering the complaint, on November 24, 2003, the DHHS filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). (# 3) The DHHS argues in its supporting memorandum of law that Title 42 U.S.C. § 405(h), made applicable to Medicare care claims by Title 42 U.S.C. § 1395ii, precludes federal question jurisdiction in this case and second, that even if the Court, in fact, has subject matter jurisdiction, Excel fails to state a claim because the DHHS maintains a right of recoupment. (# 4) On December 9, 2003, Excel submitted a memorandum of law in opposition to the dispositive motion. (# 5) At this juncture, the motion to dismiss is poised for resolution.

***II. FACTS***

From all that appears, the facts of this case are undisputed. Excel, a Massachusetts corporation, is home health care provider that receives reimbursement for services provided to Medicare beneficiaries from the DHHS under Part A of the Medicare Program. (# 1, ¶ 1; # 4 at 1) On November 5, 2001, Excel filed a Chapter 11 bankruptcy petition with the United States Bankruptcy Court for the District of Massachusetts, Case No. 01–46770–JBR. (# 1, ¶ 5) The DHHS, as a creditor in the bankruptcy proceedings, filed a proof of claim. (# 1, ¶ 6) Thereafter the parties reached an agreement to the effect that Excel owed the DHHS a total of $438,236.68 at the time that it filed the bankruptcy petition. (# 1, ¶ 7 and Exh. A, 4.3)

On May 29, 2002, Excel filed its First Amended Plan of Reorganization ("Plan"). (# 1, ¶ 8 and Exh. A) Approximately nine months later on February 20, 2003, the Bankruptcy Court confirmed the Plan. (# 1, ¶ 9 and Exh. B) As stated within the

terms and provisions of its Order, the Court found that the Plan had been accepted by the DHHS. (# 1, Exh. B, ¶ 3(e)) Moreover, the Court ordered that "[f]urthermore, all Creditors of the Debtor shall be satisfied solely from the payments as defined in the Plan, and may not seek other, further or additional payments, compensation and/or consideration from the Debtor." (# 1, Exh. B ¶ 6)

According to the terms of the Plan, DHHS's claims are designated as Class 3 claims. (# 1, ¶ 10 and Exh. A at 5) The Plan provides in section 4.3 that Excel will pay the DHHS in full for the amount owed plus interest over a period not to exceed seven years with payments to be made in monthly installments of $7,000.00. (# 1, ¶ 10 and Exh. A, section 4.3) The plaintiff alleges that the parties "mechanistically" agreed that "the sum of $7,000.00 per month would be withheld by DHHS from its ongoing and continuing payments otherwise to be made to Excel for services rendered to Medicare patients serviced by Excel." (# 1, ¶ 11)

In May of 2003 after the Bankruptcy Court had confirmed the Plan, the DHHS's fiscal intermediary calculated that Excel had been underpaid by $127,001.00 for Medicare reimbursement payments during the year 2000. (# 1, ¶ 12 and Exh. C) In a letter dated May 6, 2003, the intermediary informed Excel of the underpayment. (# 1, Exh. C) However, instead of paying Excel the $127,001.00, the DHHS withheld the funds and deducted the amount of the underpayment from the amount Excel otherwise owed the DHHS for past overpayments pursuant to the Plan. (# 1, ¶ 13)

On July 21, 2003, Excel sent the DHHS a letter to advise that, in its view, withholding the underpaid funds violated the confirmed Chapter 11 Plan. (# 1, ¶ 14 and Exh. D) Excel demanded that the total amount due be turned over to it within 14 days of the letter's issuance. (# 1, ¶ 14 and Exh. D). Having received no response to its demand letter, on September 15, 2003, Excel instituted the present litigation. (# 1, ¶ 15)

## III. DISCUSSION

### A. Standard Under Rule 12(b)(1)

Pursuant to Rule 12(b)(1), Fed.R.Civ.P., a defendant may move to dismiss an action based on lack of federal subject matter jurisdiction. Because federal courts are considered courts of limited jurisdiction, "federal jurisdiction is never presumed." *Viqueira v. First Bank*, 140 F.3d 12, 16 (1st Cir.1998). Instead, " 'the party invoking the jurisdiction of a federal court carries the burden of proving its existence.' " *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir.1995), *cert. denied*, 515 U.S. 1144, 115 S.Ct. 2581, 132 L.Ed.2d 831 (1995) (quoting *Taber Partners, I v. Merit Builders, Inc.*, 987 F.2d 57, 60 (1 Cir.), *cert. denied*, 510 U.S. 823, 114 S.Ct. 82, 126 L.Ed.2d 50 (1993)).

■ Once a defendant challenges the jurisdictional basis for a claim under Rule 12(b)(1), the plaintiff bears the burden of proving jurisdiction. *Thomson v. Gaskill*, 315 U.S. 442, 446, 62 S.Ct. 673, 86 L.Ed. 951 (1942); *Aversa v. United States*, 99 F.3d 1200, 1209 (1st Cir.1996); *Murphy*, 45 F.3d at 522. The First Circuit has held that the proponent must clearly indicate the grounds upon which the Court may properly exercise jurisdiction over the matter presented: "[I]t is black-letter law that jurisdiction must be apparent from the face of the plaintiffs' pleading." *PCS 2000 LP v. Romulus Telecomms., Inc.*, 148 F.3d 32, 35 (1st Cir.1998) (quoting *Viqueira*, 140 F.3d at 18). Hence, if the plaintiff fails to show a basis for either diversity or federal question jurisdiction,

the district court must grant the defendant's Rule 12(b)(1) motion.

■ In ruling on a motion to dismiss for lack of jurisdiction, "the district court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of plaintiff." *Aversa*, 99 F.3d at 1210; *Murphy*, 45 F.3d at 522. That is not to say that this leniency eliminates the plaintiff's burden of proving an appropriate jurisdictional basis. Indeed, a plaintiff cannot assert a proper jurisdictional basis "merely on 'unsupported conclusions or interpretations of law.'" *Murphy*, 45 F.3d at 522 (quoting *Washington Legal Foundation v. Massachusetts Bar Foundation*, 993 F.2d 962, 971 (1st Cir.1993)).

**B. Federal Question Jurisdiction**

■ In the complaint, Excel alleges that the Court may properly exercise jurisdiction pursuant to Title 28 U.S.C. §§ 1331 and 1346(b). Section 1331 provides the district court with "original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States," while § 1346(b) permits the United States to be sued as a defendant in such matters. The DHHS contends that these jurisdictional allegations are inadequate and that instead 42 U.S.C. § 405(h), made applicable to Medicare claims by 42 U.S.C. § 1395ii, applies to the matter at hand. Section 405(h) provides, in pertinent part, "[n]o action against the United States...shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter." In its opposition Excel argues that the Court may properly enforce this confirmed Chapter 11 Plan pursuant to 11 U.S.C. § 1141(a) and, consequently, that federal question jurisdiction exists.

The threshold issue presented is whether jurisdiction is proper because this is a matter arising under the bankruptcy law or whether the Court is precluded from exercising jurisdiction because this is a Medicare dispute.

*1. The Medicare Act: An Overview*

In 1965, Congress enacted Title XVIII of the Social Security Act, 79 Stat. 291, as amended, 42 U.S.C. §§ 1395 *et seq.*, establishing Federal Health Insurance for the Aged or Medicare. Part A of the Medicare Act allows reimbursement for services rendered by Medicare service providers such as hospitals or home health care medical providers like Excel that have entered into a provider agreement with the Secretary of the Department of Health and Human Services. Title 42 U.S.C. § 1395(c); *see also Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 6, 120 S.Ct. 1084, 146 L.Ed.2d 1 (2000); *Heckler v. Ringer et al.*, 466 U.S. 602, 605, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984). The DHHS contracts with fiscal intermediaries, who, after determining the reasonable costs of services rendered, disburse these reimbursement payments. Title 42 U.S.C. §§ 1395h, 1395u. Throughout the year, fiscal intermediaries make estimated payments based upon the actual costs the providers incurred in the previous fiscal year. These payments will then be adjusted upon a determination of an overpayment or underpayment for services rendered. Title 42 U.S.C. § 1395g(a).

Because Excel, as a Part A Medicare service provider, challenges the method by which the DHHS disseminates its reimbursement payments, the DHHS argues that the dispute arises under the Medicare Act. The contention is that the particular limitations set forth in the Medicare regulations govern and supersede any provision of the Bankruptcy Code conferring jurisdiction over this matter to the Court.

### 2. Jurisdiction under the Medicare Act

As the First Circuit noted in *Kechijian v. Califano*, 621 F.2d 1, 3 (1st Cir.1980), the Medicare Act permits judicial review "only in limited specific instances." Turning to the language of the Act itself as the "starting basis" for interpreting these limits, *Consumer Prod. Safety Comm'n v. GTE, Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980), courts construe "[t]he language of Section 405(h) [to] suggest[ ] that in Congress' judgment, paying the price of occasional inefficiency was justified to prevent 'possibly premature interference by different individual courts' applying different interpretations of Medicare's complex statute and regulations." *United States v. University of Massachusetts Memorial Medical Center*, 296 F.Supp.2d 20, 27 (D.Mass.2003) (citation omitted). Title 42 U.S.C. § 405(h) reads as follows:

> Finality of [Secretary's] decision.
>
> The findings and decision of the [Secretary] after a hearing shall be binding upon all individuals who were parties to such hearing. No finding of fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or governmental agency, except as herein provided. *No action against the United States, the [Secretary] or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.*

Title 42 U.S.C. § 405(h), as applied to Title XVIII or the Medicare Act by 42 U.S.C. § 1395ii (emphasis added).

■ Title 42 U.S.C. § 405(g), however, establishes the exact framework for obtaining judicial review of the Secretary's decision. *Milo Community Hospital v. Weinberger*, 525 F.2d 144, 146 (1 Cir., 1975). It provides, in pertinent part, that an individual may challenge "any final decision of the Commission of Social Security made *after* a hearing to which he was a party." Title 42 U.S.C. § 405(g) (emphasis added). Thus both sections require that a party exhaust administrative remedies before challenging a claim involving a Medicare reimbursement payment in the district court.

Although *Weinberger v. Salfi, et al.*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) involved a different provision under the Social Security Act, courts frequently apply the Supreme Court's ruling in that case when resolving the issue of jurisdiction over Medicare reimbursement payment disputes. See *Illinois Council*, 529 U.S. at 11, 120 S.Ct. 1084; *Ringer*, 466 U.S. at 615, 104 S.Ct. 2013; *Rhode Island v. Califano*, 585 F.2d 1153 (1st Cir.1978); *Cervoni v. Secretary of HEW*, 581 F.2d 1010, 1015 (1st Cir.1978). Because the plaintiff failed even to file an application with the Secretary, the Supreme Court in *Salfi* found that the District Court could not exercise federal question jurisdiction over the suit based on the plain language of the Social Security Act. The Supreme Court concluded that the "sweeping and direct" language of the third sentence of § 405(h) amounts to "more than a codified requirement of administrative exhaustion." *Salfi*, 422 U.S. at 756, 95 S.Ct. 2457. The Court went on to say:

> Moreover, if the third sentence is construed to be nothing more than a requirement of administrative exhaustion, it would be superfluous. This is because the first two sentences of § 405(h), which appear in the margin, assure that administrative exhaustion will be required. Specifically, they prevent review of decisions of the Secretary save as provided in the Act, which provision is made in § 405(g). The latter provision prescribes typical requirement for review of matters before an administra-

tive agency, including administrative exhaustion.

*Salfi,* 422 U.S. at 756–58, 95 S.Ct. 2457.

Applying this logic, § 405(g) operates both as a source of jurisdiction and a limitation on its exercise. *Milo Community Hospital,* 525 F.2d at 146–47.

To summarize, unless the plaintiff has exhausted the administrative review process and the Secretary of the DHHS has rendered a final decision, Section 205(h) of the Social Security Act, 42 U.S.C. § 405(h), generally bars subject matter jurisdiction asserted under 28 U.S.C. § 1331 and § 1346(b) with respect to Medicare reimbursement disputes. *Mediplex of Massachusetts, Inc. v. Shalala,* 39 F.Supp.2d 88, 92 (D.Mass., 1999); *see also Illinois Council,* 529 U.S. at 12, 120 S.Ct. 1084; *Kechijian,* 621 F.2d at 4; *Hospital San Jorge, Inc. v. Secretary of HEW,* 598 F.2d 684 (1st Cir.1979); *Rhode Island Hospital,* 585 F.2d at 1157; *Cervoni,* 581 F.2d at 1015; *Milo Community Hospital,* 525 F.2d at 147. For example, in *Milo Community Hospital,* the First Circuit found federal question jurisdiction asserted under 28 U.S.C. § 1331 to be clearly unavailable in the absence of a final decision of the Secretary in a dispute involving the termination of a hospital's status as a Medicare service provider. *Milo Community Hospital,* 525 F.2d at 147. Regardless of whether § 405(h) and *Salfi* require an actual final decision of the Secretary, implicit in the administrative exhaustion doctrine is the "non-waivable requirement" that the claimant, at the very least, have filed its Medicare claim with the Secretary of the DHHS. *Ringer,* 466 U.S. at 617, 104 S.Ct. 2013 (citing *Mathews v. Eldridge,* 424 U.S. 319, 328, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)).

There is no allegation in the complaint that Excel ever presented its claim to the Secretary of the Department of Health and Human Services. Given the strict limitations on judicial review of Medicare disputes, this failure is fatal to its claim. Although judicial review of Medicare claims may be permitted where "the Act provided no available administrative process leading to judicial review," *Hospital San Jorge,* 598 F.2d at 686, there is no allegation, or basis in the allegations to find, that this exception applies here.

According to Excel, the fact that it never filed an application with the Secretary of the DHHS does not preclude the Court from exercising subject matter jurisdiction. Because its claims involve a confirmed Chapter 11 plan of reorganization, the plaintiff contends that the Medicare Act's limitations on judicial review fail to apply. Although the Plan provides the method by which Class 3 creditors, namely the DHHS, disburse Medicare reimbursement payments to Excel, the plaintiff characterizes the underlying dispute as arising from the DHHS' alleged violation of a confirmed Chapter 11 Plan of Reorganization.

In Excel's view, because its complaint is essentially a bankruptcy matter, Chapter 11 supersedes the jurisdictional bar of the Medicare Act. Although the complaint only asserts jurisdiction under 28 U.S.C. §§ 1331 and 1346(b), later, in its Opposition to the Defendant's Motion to Dismiss, Excel states that the Court may enforce the provisions of the Plan pursuant to 11 U.S.C. § 1141(a). That statutory subsection provides that "... the provisions of a confirmed plan bind ... any creditor ... whether or not the claim or interest of such creditor ... is impaired under the plan and whether or not such creditor ... has accepted the plan."

Despite Excel's characterization of the dispute as a bankruptcy matter, in reality, the core issue at stake is whether the DHHS may permissibly withhold Medicare

reimbursement payments owed to this service provider. As a result of entering into a Provider agreement, the Medicare Act defined the relationship between the two parties long before Excel filed a Chapter 11 bankruptcy petition. With this in mind, despite the DHHS' status as a Class 3 creditor under the Plan of Reorganization, Excel essentially is challenging the method the DHHS employs to disburse reimbursement payments. Such claims "arise under" the Medicare Act rather than the Bankruptcy Code. *Ringer,* 466 U.S. at 615, 104 S.Ct. 2013; *see also In re St. Johns Home Health Agency, Inc.,* 173 B.R. 238, 243 (Bankr.S.D.Fla.1994)("the manner of [DHHS'] recovery of those overpayments, are all matters that are subject to administrative appeal, and this Court cannot consider those matters until St. Johns' administrative remedies are exhausted.")

■ Courts broadly construe the phrase "arising under" to include claims that are "inextricably intertwined" with benefits determinations, *Ringer,* 466 U.S. at 622–24, 104 S.Ct. 2013, and claims for which the "standing and substantive basis" arise under the Medicare Act. *Salfi,* 422 U.S. at 760–61, 95 S.Ct. 2457. Even claims for "future benefits" are considered sufficient to arise under the Medicare Act for purposes of invoking § 405(h). *Illinois Council,* 529 U.S. at 12, 120 S.Ct. 1084 (citing *Ringer,* 466 U.S. at 621–622, 104 S.Ct. 2013). Moreover, a dispute need not simply concern the amounts paid to Medicare providers to be considered to "arise under" the Act. For example, in *Ringer,* the Supreme Court considered a procedural challenge to the Act to be a claim "arising under" the Medicare Act.

The broad reading of "arising under" comports with the legislative intent. Claims involving Medicare and Medicaid payments require an interpretation of the DHHS' complex reimbursement regulations and manuals. *University of Massachusetts Memorial Medical Center,* 296 F.Supp.2d at 27. Congress, in enacting § 405(h), endowed the Secretary with the responsibility to assess "reasonable costs owed to Medicare providers" because it recognized the courts' and the legislature's lack of medical expertise to make such determinations. Title 42 U.S.C. § 1395x(v)(1)(A); *see also Illinois Council,* 529 U.S. at 13, 120 S.Ct. 1084; *La Casa Del Convaleciente v. Sullivan,* 965 F.2d 1175, 1178 (1 Cir., 1992); *U.S. Department of Health and Human Services v. Noonan,* 1996 WL 728352 at *3 (D.Mass.1996). If Congress had intended otherwise, it would have "involve[d] the courts in the complex and detailed task of 'ascertaining the appropriate medical charges for technical services based on facts which vary from community to community.'" *Kechijian,* 621 F.2d at 3 (quoting *St. Louis Univ. v. Blue Cross Hosp. Service,* 537 F.2d 283, 289 (8 Cir.), *cert. denied,* 429 U.S. 977, 97 S.Ct. 484, 50 L.Ed.2d 584 (1976)).

### 3. The Medicare Act as Applied to Bankrupt Providers

■ In sum, Congress intended the Medicare Act to provide the "exclusive means" to resolve claims that "arise under" it. *Noonan,* 1996 WL 728352 at *3. Thus, in accordance with congressional intent, courts generally hold Medicare disputes that involve a provider in bankruptcy to be subject to the § 405(h) jurisdictional preclusion in the same way that it applies to all claims arising under the Medicare Act. *In re St. Mary Hospital,* 123 B.R. 14, 18 (E.D.Pa., 1991) (failure to exhaust administrative remedies barred the court from exercising jurisdiction over a Chapter 11 debtor-Medicare provider's reimbursement dispute).

In *Noonan* the District Court held that the Bankruptcy Court could not properly grant a Chapter 7 Trustee an extension of

time to file a Medicare cost report where the provider failed to exhaust administrative channels. The Court remarked that "[t]he misfortune that a provider is in bankruptcy when he has a reimbursement dispute ... should not upset the careful balance between administrative and judicial review." *Noonan*, 1996 WL 728352 at *2 (quoting *In re St. Mary Hosp.*, 123 B.R. at 17).

As the third sentence of § 405(h) indicates, "*[n]o action* ... to recover on any claim" *arising under* the Medicare regulations shall be "brought under § 1331 or § 1346 of title 28." Title 42 U.S.C. § 405(h) (emphasis added). "No action" certainly includes Medicare claims brought by Chapter 11 debtor-providers pursuant to 28 U.S.C. §§ 1331 and 1346(b). However, neither this sentence nor 42 U.S.C. § 405(h) in its entirety contains language explicitly precluding bankruptcy jurisdiction as established by 28 U.S.C. § 1334. In fact, in a case cited by the plaintiff, in *In re Slater Health Center, Inc.*, 294 B.R. 423 (Bankr.D.R.I., 2003), the Bankruptcy Court allowed jurisdiction under § 1334 where a Chapter 11 debtor-Medicare service provider challenged the government's reduction of Medicare payments owed due to alleged pre-petition overpayment of benefits. The Bankruptcy Court there stated that "the specific language of 42 U.S.C. § 405(h) does not state that jurisdiction under 28 U.S.C. § 1334 is subordinate to 42 U.S.C. § 405(h). [To the contrary,] ... under the plain language rule, 28 U.S.C. § 1334 grants bankruptcy jurisdiction over matters involving Medicare." *In re Slater Health Center, Inc.*, 294 B.R. at 427–8 (quoting *In re Healthback, L.L.C.*, 226 B.R. 464, 469 (Bankr.W.D.Okla.1998)).

However, this logic contradicts the majority view that bankruptcy jurisdiction under 28 U.S.C. § 1334 fails to provide an independent basis for jurisdiction that would not be in "contravention" of 42 U.S.C. § 405(h). *In re St. Johns Home Health Agency*, 173 B.R. at 242–43 (Bankr. S.D.Fla.1994). The statute itself provides that "unless indicated otherwise by another Act of Congress," the district courts are endowed with "original *but not exclusive* jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Title 28 U.S.C. § 1334(b) (emphasis added). As indicated by Congress, disputes that arise under the Medicare Act constitute circumstances where the phrase "unless indicated otherwise by another Act of Congress" applies. The original draft of 42 U.S.C. § 405(h) prohibited any action under "section 24 of the Judicial Code of the United States," which, at the time, included nearly all District Court jurisdictional provisions including bankruptcy jurisdiction. *In re St. Johns Home Health Agency*, 173 B.R. at 244 (citing *Amendments to Title II of the Social Security Act*, § 201, 53 Stat. 1362, 1371 (1939)); *Judicial Code of the United States*, § 24, 36 Stat. 1093 (1911); *In re Upsher Laboratories, Inc.*, 135 B.R. 117, 119 (Bankr.W.D.Mo.1991). Revisions to the Judicial Code resulted in jurisdictional grants being placed in distinct sections, *In re St. Johns Home Health Agency*, 173 B.R. at 244 (citing Pub.L. No. 80–773, 62 Stat. 869, 930–35 (1948)), and the current version of § 405(h) replaces the "section 24" reference with "section 1331 or 1346 of title 28." *In re St. Johns Home Health Agency*, 173 B.R. at 244 (citing Pub.L. 98–369, § 2663(a)(4)(D), 98 Stat. 1162 (1984); *Upsher*, 135 B.R. at 119). Given the legislature's provision that "none of such amendments shall be construed as changing or affecting any right, liability, status or interpretation which existed" prior to their enactment, *In re St. Johns Home Health Agency*, 173 B.R. at 244 (citing Pub.L. 98–369, § 2664(b), 98 Stat. 1171–72 (1984)), Congress obviously intended the

current version of § 405(h) also to preclude bankruptcy jurisdiction. *In re St. Johns Home Health Agency*, 173 B.R. at 244; *In re St. Mary Hospital*, 123 B.R. at 17.

This analysis of the amendment which substituted "section 1331 or 1346 of title 28" for "Section 24 of the Judicial Code of the United States" as set forth in the *St. Johns Home Health Agency* case has been adopted by two Circuit courts which had to determine whether diversity jurisdiction, as set forth in 28 U.S.C. § 1332, was also precluded by the third sentence of 42 U.S.C. § 405(h) even though § 1332 is not mentioned in that sentence. In the case of *Bodimetric Health Services, Inc. v. Aetna Life & Casualty*, 903 F.2d 480, 489 (7 Cir.), *cert. denied*, 498 U.S. 1012, 111 S.Ct. 579, 112 L.Ed.2d 584 (1990), the Court noted that Congress, in the Deficit Reduction Act of 1984 in a section labeled "Technical Corrections," adopted

> ...the following language: "Section 205(h) of such Act is amended by striking out 'section 24 of the Judicial Code of the United States' and inserting in lieu thereof 'section 1331 or 1346 of title 28, United States Code,' " Pub.L. No. 98–369, 98 Stat. 1162, § 2663(a)(4)(D). At the same time, Congress cautioned the courts not to interpret DEFRA's "Technical Corrections" as substantive changes:

> [T]he amendments made by section 2663 shall be effective on the date of the enactment of this Act; *but none of such amendments shall be construed as changing or affecting any right, liability, status, or interpretation which existed (under the provisions of law involved) before that date.*

*Id.*, § 2664(b) (emphasis supplied). In this section, Congress clearly expressed its intent not to alter the substantive scope of section 405(h). Because the previous version of section 405(h) precluded judicial review of diversity actions, so too must newly revised section 405(h) bar these actions. Any other interpretation of this section would contravene section 2664(b) by "changing or affecting [a] right, liability, status, or interpretation" of section 405(h) that existed before the Technical Corrections were enacted.

*Bodimetric*, 903 F.2d at 489 (footnote and citations omitted; emphasis in original).

Just six years ago, the Eighth Circuit found "...the Seventh Circuit's analysis [in *Bodimetric*] persuasive..." and "h[e]ld [that] the jurisdictional bar imposed by sentence three of § 405(h) extends to claims based on diversity of citizenship." *Midland Psychiatric Associates, Inc. v. United States*, 145 F.3d 1000, 1004 (8th Cir.1998). *See also Allstar Care, Inc. v. Blue Cross and Blue Shield of South Carolina*, 184 F.Supp.2d 1295, 1298–99 (S.D.Fla.2002).

In the absence of any First Circuit precedent to the contrary and the fact that the Seventh and Eighth Circuits have analyzed the issue in the same manner as was done in the *St. Johns Home Health Agency* case, I am of the view that the *St. Johns Home Health Agency* case accurately states the law. I am further of the opinion that the Ninth Circuit's decision in the case of *In re Town & Country Nursing Home Services, Inc.*, 963 F.2d 1146, 1155 (9th Cir.1991), the *Slater* case, 294 B.R. 423 and other Bankruptcy Court cases,[1] to the extent that they hold that the third sentence of § 405(h) does not preclude ju-

---

1. *In re Healthback, L.L.C.*, 226 B.R. 464, 469 (Bankr.W.D.Okla.1998); *In the Matter of First American Health Care of Georgia, Inc.*, 208 B.R. 985, 988–9 (Bankr.S.D.Ga.1996); *In re Shelby County Healthcare Services of AL, Inc.*, 80 B.R. 555, 559–60 (Bankr.N.D.Ga.1987).

risdiction under 28 U.S.C. § 1334 of claims arising under of the Medicare Act, are in error.

In sum, plaintiff's claims in this case "arise under" the Medicare Act for the purposes of invoking § 405(h). The third sentence of § 405(h) precludes bankruptcy jurisdiction (as well as diversity jurisdiction) of such claims even though § 405(h) does not specifically mention 28 U.S.C. § 1332 or § 1334. Since the jurisdictional basis of plaintiff's complaint is either 28 U.S.C. §§ 1331 or 1346(b) (statutes specified in the third sentence of § 405(h) as precluding jurisdiction of claims "arising under" the Medicare Act) or, alternatively, 28 U.S.C. § 1334, which, as indicated, does not provide jurisdiction of such claims under the holding of the *St. Johns Home Health Agency* case, this case must be dismissed pursuant to Rule 12(b)(1), Fed. R.Civ.P., for lack of subject matter jurisdiction.

### IV. RECOMMENDATION

I RECOMMEND that the Defendant's Motion To Dismiss (# 3) be ALLOWED and that judgment shall enter for the defendant.

### V. REVIEW BY THE DISTRICT JUDGE

The parties are hereby advised that pursuant to Rule 72(b), Fed.R.Civ.P., any party who objects to this recommendation must file a specific written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule

72(b), Fed.R.Civ.P., shall preclude further appellate review. *See Keating v. Secretary of Health and Human Services,* 848 F.2d 271 (1st Cir.1988); *United States v. Emiliano Valencia–Copete,* 792 F.2d 4 (1st Cir.1986); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega,* 678 F.2d 376, 378–379 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st Cir.1980); *see also Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

September 30, 2004.