MILO COMMUNITY HOSPITAL, etc.,
Plaintiff-Appellant,

v.

Caspar W. WEINBERGER et al.,
Defendants-Appellees.

No. 75–1205.

United States Court of Appeals,
First Circuit.

Argued Sept. 10, 1975.

Decided Nov. 14, 1975.

Joseph J. Bichrest, Greenville, Me., for appellant.

Lawrence E. Burstein, Asst. Regional Atty., Region I, United States Dept. of Health, Education and Welfare of Boston Mass., with whom Peter Mills, U. S. Atty., Portland, Me., was on brief, for appellee.

Before COFFIN, Chief Judge, McENTEE, Circuit Judge, and THOMSEN,* Senior District Judge.

COFFIN, Chief Judge.

The Milo Community Hospital, a sixteen bed private non-profit hospital in Milo, Maine, brought suit in the district court to enjoin defendant Secretary of Health, Education, and Welfare and other relevant officials (HEW) from terminating its federally assisted status as a "provider of services" under Title XVIII of the Social Security Act, 42 U.S.C. § 1395 et seq. (the Medicare Act). The

* Of the District of Maryland, sitting by designation.

hospital attacked HEW's decision in two counts of its complaint: in Count One it alleged that HEW had not prepared and issued an Environmental Impact Statement in compliance with the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.* (NEPA); in Count Two it charged that the termination was arbitrary, capricious, and a denial of equal protection. Jurisdictional grounds asserted were 42 U.S.C. § 4332(2)(C); 5 U.S.C. §§ 702 and 706; and 28 U.S.C. §§ 1331, 1343, and 1361. Defendants denied jurisdiction under both counts and generally admitted the factual allegations. They further answered, as to Count One, that the decertification of a provider under the Medicare Act is controlled by statute and regulation and is not a "major Federal action significantly affecting the quality of the human environment" under NEPA; and, as to Count Two, that the hospital had failed to exhaust its administrative remedies. From a judgment in favor of defendants, entered after hearing by the court, the hospital appeals.

The relevant factual background is the following. Appellant has been authorized to furnish federally compensable Medicare services as a "provider of services", as the term is defined in 42 U.S.C. § 1395x.[1] In October, 1973, the Bureau of Health Insurance of the Social Security Administration notified the hospital of a number of respects in which its facilities failed to comply with the 1967 edition of the National Fire Protection Association's Life Safety Code, the relevant set of standards made applicable by 20 C.F.R. 405.1022(b).[2] After a year of discussion, rectification of some deficiencies, and extensions of time for the hospital to submit an acceptable plan of correction, the Bureau, in November, 1974, issued its formal letter, notifying the hospital that, as of December 13, 1974, its Medicare provider agreement would be terminated. The hospital was advised that, if the Medicare program requirements were met in the future, it could request re-establishment of its eligibility to participate as a provider. It was further advised of its rights to request and have a hearing before an administrative law judge within six months.[3] While the hospital sought, and was denied, reconsideration, it did not seek administrative review of the Bureau's action, but brought this suit.

During the same period, the Bureau had advised two other small hospitals in nearby towns of their failure to comply with the Life Safety Code. One, in Dexter, was terminated as a provider in December, 1974. The other, in Dover-Foxcroft, was allowed, subject to correcting certain deficiencies, to continue as a provider, pending construction of a new regional hospital in the same town—a project in which Dover-Foxcroft and several other communities had voted to participate and for which a firm time schedule had been determined.[4] The town of Milo voted twice not to join the new Hospital Administrative District, the second occasion of such vote being in December, 1974, at which time Milo also

1. A provider "hospital" under this statute must be an institution which meets, in addition to requirements relating to the nature and scope of professional services, "such other requirements as the Secretary finds necessary in the interest of the health and safety of individuals who are furnished services in the institution." 42 U.S.C. § 1395x(e)(9).

2. While some items noticed were relatively minor, others were more basic and pervasive, such as the unprotected wood frame construction, lack of fire-stoppers in concealed spaces, lack of non-combustible interior walls and partitions, and inadequate means of egress.

3. Subpart O of Part 405 of the regulations governing federal health insurance for the aged and disabled, §§ 405.1501–405.1595, spell out in elaborate detail the procedures available to a provider of services wishing to contest an initial determination that it no longer qualifies. The various steps include a request for reconsideration, a hearing before an administrative law judge, and a discretionary review by an Appeals Council panel of three persons, one of whom must be from the U.S. Public Health Service.

4. It is the disparate treatment given to Milo and Dover-Foxcroft hospitals that gives rise to the equal protection claim.

voted to appropriate $390,000 for new hospital facilities and to raise $150,000 by a fund drive. As of March 5, 1975, the date of hearing before the district court, no firm plan for construction and financing had been submitted.

The district court found that termination of the hospital's provider status would force it to close, causing Milo patients to travel 13 miles to Dover-Foxcroft or 32 miles to Bangor. In addition to the deprivation of local hospital facilities, the town would lose some $170,000 in annual hospital payroll and $30,000 in annual local purchases. Established by stipulation were the facts that HEW had not filed an Environmental Impact Statement (EIS) and, indeed, that its position has always been that 42 U.S.C. § 4332(2)(C) of the National Environmental Protection Act was not applicable to certification and decertification decisions under the Medicare Act.

■ The district court held that it had jurisdiction, that—as to Count One—HEW was not required to file an EIS before terminating the hospital's provider status,[5] and—as to Count Two—that the hospital was not entitled to judicial review since administrative remedies had not been exhausted. The court added, although unnecessary to its decision, that it found no merit in the claims of arbitrariness and denial of equal protection.

Since the decision of the district court, the Supreme Court has spoken most relevantly to the jurisdictional issues in the present case. In *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522, 1975, the widow of a deceased wage earner was denied certain insurance benefits because she had been the decedent's wife less than the nine months required by 42 U.S.C. § 416(C) for entitlement to benefits. After seeking and being refused reconsideration, she brought suit in district court, challenging the constitutionality of the statute. The Court held that the first two sentences of 42 U.S.C. § 405(h) "prevent review of decisions of the Secretary save as provided in the Act, which provision is made in § 405(g)."[6] 422 U.S. at 757, 95 S.Ct. at 2463. In this case it would seem irrelevant to analyze each of the heads of jurisdiction alleged by appellant. Some, such as 28 U.S.C. § 1331, are clearly not available. But whether other bases of jurisdiction are present or not, § 405(g) is both a source of jurisdiction and a limitation on its exercise.

Section 405(g) sets forth the procedure to be followed in obtaining judicial review of the Secretary's decision. It commences with the words, "Any individual, after any final decision of the Secretary made after a hearing . . . may obtain a review of such decision by a civil action . . . ."[7] The Supreme Court in *Salfi* variously characterized this requirement as "central to the requisite grant of subject matter jurisdiction", *id.* at 764, 95 S.Ct. at 2466, "a statutorily specified jurisdictional prerequisite", *id* at 766, 95 S.Ct. at 2467, "something more than simply a codification of the judicially developed doctrine of exhaustion", *loc. cit.*, but "not precisely analo-

---

**5.** The hospital sought to broaden the issue beyond HEW's failure to file an EIS, by arguing that HEW had violated 42 U.S.C. § 4332(A), (B), and (D) by not pursuing an interdisciplinary approach, developing environmentally focused procedures, and exploring alternative uses of resources in its decision making process. Such contentions were not supported by the complaint or the evidence. At no time, on appeal, did the hospital attempt to invoke 42 U.S.C. § 4333, requiring internal agency review of policy and procedures in the light of NEPA.

**6.** Section 405(h) is facially applicable to determinations of the Secretary under Title II of the Social Security Act, but by 42 U.S.C. § 1395ii is also made applicable to the present Title XVIII proceeding. So also is § 405(g) made applicable to this case by 42 U.S.C. § 1395ff(c).

**7.** The fact that the Secretary, not having been so requested, did not hold a hearing does not affect the "finality" of the decision within the meaning of § 405(g). It is clear from the statute, the regulations, and the Court's decision in *Salfi* that, while an aggrieved person or institution has a right to a hearing, the holding of a hearing (which is not requested) is not a predicate to a final decision.

gous to the more classical jurisdictional requirements . . . as [28 U.S.C.] 1331 and 1332." *Loc. cit.* It is not made inapplicable by reason of a constitutional challenge, beyond the power of the Secretary to take remedial action. The requirement, however, is not jurisdictional in an inflexible sense, as Mr. Justice Brennan noted in dissent, *id.* at 799, 95 S.Ct. 2457, since the Secretary may "determin[e] in particular cases that full exhaustion of internal review procedures is not necessary for a decision to be 'final' within the language of § 405(g)." *Id.* at 767, 95 S.Ct. at 2467.

In *Salfi*, despite a defense of failure to exhaust contained in a motion submitted to the district court, the Court noted that the Secretary was not raising on appeal any challenge to the sufficiency of the allegations of exhaustion in the complaint and interpreted that action to be a "determination by him that for the purposes of this litigation the reconsideration determination is 'final'." *Id.* at 767, 95 S.Ct. at 2468. In the case at bar there is no question but that HEW has consistently raised and argued nonexhaustion as to Count Two both in the district court and before us. The district court was clearly correct in its holding that appellant could not claim judicial review of its due process and equal protection claims.

HEW's stance as to Count One is much less forthright. Although the answer began with a blanket denial of jurisdiction, Count One flatly asserted, by way of a detailed additional answer, the inapplicability of NEPA. This approach was in marked contrast to the answer to Count Two, where a detailed additional answer affirmatively raised the issue of non-exhaustion. In addition, the case was tried to the district court on the theory that it could reach the merits on Count One although not on Count Two. And the court noted the stipulation that it had always been HEW's position that decertification decisions were not subject to NEPA's requirements. It was not until the appeal, subsequent to the decision

in *Salfi*, that HEW argued that § 405(g) bars judicial review of all issues in the case.

Understandable though HEW's change of mind might be, having the benefit of the Court's strictures as to the sweep of § 405(g), we cannot avoid the conclusion that, for purposes of the trial below, the Secretary through his counsel, had made a determination that his refusal to reconsider his decision that no Environmental Impact Statement need accompany a decertification action was "final".

We arrive at this conclusion reluctantly. We would prefer not to decide the NEPA issue on the merits but defer decision until a case appears where full administrative review has been had. The deliberations of an administrative law judge and an Appeals Council could not fail to provide both a deeper perspective and more thorough consideration than are permitted a court, which can be concerned only with legal error.

■ Appellant, however, deliberately refused to follow the course of administrative review and, HEW having effectively determined in this case that exhaustion would not be necessary, we must decide the merits. We decide on as narrow a ground as possible. We need not decide whether an Environmental Impact Statement will ever be required before a decertification decision is made. We do not exclude the possibility that such a decision might have a sufficient environmental impact to constitute a major federal action significantly affecting the quality of the environment, and we decline to consider whether environmental considerations would be irrelevant to all decertification decisions. Here we decide only that the Secretary did not err in failing to prepare an Environmental Impact Statement because, under the circumstances of this case, consideration of the factors that the appellant has characterized as "environmental considerations" could not have changed the Secretary's decision.

Appellant's contention is that the economic consequences of closing the hospi-

tal and the resulting inconvenience and increased use of automobile transportation by Milo residents are environmental consequences that the Secretary had to weigh, via an impact statement, in reaching his decision to decertify the hospital. Accepting *arguendo* appellant's characterization of these factors as "environmental considerations", we hold that no impact statement was required because under the terms of the Medicare Act these considerations are irrelevant to a decertification determination. When the Secretary finds serious noncompliance with fire prevention requirements of the Life Safety Code, he is under a statutory duty to terminate the Provider Agreement. The kind of dislocation that Milo Hospital alleges it will experience will accompany most termination decisions. We are certain that Congress did not intend the Secretary to have the discretion to give any weight to such consequences in arriving at a termination decision. Not only, therefore, were such factors irrelevant, but they would also be impermissible factors for the Secretary to consider in making this decision. Under these circumstances we hold that no impact statement was required.

Therefore, whether or not the decertification action in this case could be said to be "major", and whether or not the prospective social and economic impact could be said to fall within the statutory term, "quality of the human environment", *see Maryland-National Capital Park and Planning Commission v. U. S. Postal Service*, 159 U.S.App.D.C. 158, 487 F.2d 1029 (1973), and *Hanly v. Kleindienst*, 471 F.2d 823 (2d Cir. 1972), we hold that the decertification of a small hospital as a "provider" or services under the Medicare Act for continued non-compliance with significant fire protection provisions of the Life Safety Code is a decision which should be governed solely by that Act.

*Affirmed.*