[NOT FOR PUBLICATION--NOT TO BE CITED AS PRECEDENT]
 United States Court of Appeals
 For the First Circuit

No. 97-1787

 RICHARD MAX STRAHAN,

 Plaintiff, Appellant,

 v.

 JOHN L. LINNON, ET AL.,

 Defendants, Appellees.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Douglas P. Woodlock, U.S. District Judge]

 Before

 Selya, Boudin and Stahl,
 Circuit Judges.

 Richard Max Strahan on brief pro se.
 Lois J. Schiffer, Assistant Attorney General, James C.
Kilbourne, David C. Shilton, Samuel D. Rauch and Mark R. Haag,
Attorneys, Department of Justice.

July 16, 1998

 Per Curiam. Richard Max Strahan appeals from the
grant of summary judgment in favor of federal defendants on his
claims alleging violations of the Endangered Species Act
("ESA"), the Marine Mammal Protection Act ("MMPA"), and the
National Environmental Policy Act ("NEPA"). We affirm.
 I. Background
 On June 7, 1994, Strahan filed a pro se complaint
against the Coast Guard alleging violations of the ESA, the
MMPA, NEPA, and the Whaling Convention Act ("WCA"). Strahan
moved for a preliminary injunction, and the Coast Guard cross-
moved for summary judgment in its favor. By decision dated May
2, 1995, the district court granted the Coast Guard's motion
for summary judgment, in part. However, the district court
concluded that, given the Coast Guard's "dilatoriness and
neglect in initiating mandated procedures," Strahan was
entitled to a preliminary injunction directing the Coast Guard
to fulfill certain procedural requirements of the ESA, the
MMPA, and NEPA.
 During this same period, the Coast Guard initiated
formal consultation with the National Marine Fisheries Service
("NMFS") regarding its vessel operations along the Atlantic
Coast. On August 1, 1995, the Coast Guard submitted a final
(ESA) biological assessment to NMFS. On September 15, 1995,
NMFS issued a biological opinion concluding that Coast Guard
Atlantic activities did not jeopardize the continued existence
of protected marine species. On September 22, 1995, the Coast
Guard published a (NEPA) environmental assessment and a
proposed finding of no significant impact. During the months
that followed, several commentators urged the Coast Guard to
prepare an environmental impact statement and to consider
additional protective measures. In addition, on October 9,
1995, the Coast Guard struck a (suspected) Humpback whale. On
February 22, 1996, the Coast Guard re-initiated consultation
with NMFS.
 On June 21, 1996, Strahan, now represented by
counsel, filed a twenty-three count amended complaint. The
amended complaint added defendants Secretary of Commerce, the
National Oceanic and Atmospheric Administration, and NMFS.
 On July 22, 1996, NMFS issued a second biological
opinion. Based on new information that indicated a possible
decline in the population of Northern Right whales, and taking
into account cumulative effects, NMFS concluded that Coast
Guard operations were likely to jeopardize the continued
existence of Northern Right whales. Accordingly, it
recommended reasonable and prudent alternatives, which would
"significantly reduce[] the Coast Guard's potential to cause
injury or mortality to a right whale, and therefore, avoid the
likelihood of jeopardizing the continued existence of right
whales." NMFS did not alter its earlier conclusion that Coast
Guard activities were not likely to jeopardize other protected
species.
 On October 31, 1996, the Coast Guard published a
final environmental impact statement which proposed the
Atlantic Protected Living Marine Resources ("APLMR")
Initiative. The APLMR Initiative essentially adopted and
expanded on measures recommended in the NMFS's 1996 biological
opinion. On December 9, 1996, the Coast Guard issued a Record
of Decision announcing its intent to implement the APLMR 
Initiative. 
 On March 7, 1997, defendants moved for summary
judgment. Strahan cross-moved for partial summary judgment. 
By order dated May 20, 1997, the district court granted full
summary judgment in favor of defendants. This pro se appeal
followed. Of the twenty-three counts in the amended complaint,
Strahan makes an argument with respect to--or at least
mentions--only fourteen of these counts on appeal (namely,
Counts I, II, III, IV, VI, VII, IX, X, XII, XIII, XIV, XX, XXI,
XXII).

 II. The Standard of Review 
 A constant theme throughout Strahan's brief, but most
strenuously argued in his introductory section, is that the
district court erred in applying a deferential standard of
review. He contends that as "past violators" of the provisions
of the ESA and the MMPA, neither the Coast Guard nor NMFS is
entitled to any deference. He also suggests that the district
court extended deference to the federal agencies involved to
the "point of gullibility." We disagree. 
 Contrary to Strahan's suggestion, the appropriate
scope of review of federal agency action under the ESA, the
MMPA, and NEPA is the standard set forth under the
Administrative Procedure Act, 5 U.S.C. 706(2)(A). See,
e.g., Dubois v. United States Dep't of Agric., 102 F.3d 1273,
1284 (1st Cir. 1996) (NEPA), cert. denied, 117 S. Ct. 2510
(1997); Sierra Club v. Glickman, 67 F.3d 90, 95-96 (5th Cir.
1995) (ESA). Under this standard, an agency decision may not
be set aside unless found to be "arbitrary, capricious, an
abuse of discretion, or otherwise not in accordance with law." 
5 U.S.C. 706(2)(A). When reviewing agency action, we apply
the same legal standards that pertain in the district court. 
See Associated Fisheries of Maine, Inc. v. Daley, 127 F.3d 104,
109 (1st Cir. 1997).

 III. Jeopardy and the Duty to Conserve
 Section 7 of the ESA, titled "Interagency
Cooperation," places two responsibilities on federal agencies. 
Section 7(a)(1) provides that all agencies shall, "in
consultation with and with the assistance of the Secretary,"
utilize their authorities in furtherance of the purposes of the
ESA by carrying out programs for the conservation of endangered
species and threatened species. 16 U.S.C. 1536(a)(1). 
Section 7(a)(2) of the ESA requires that all federal agencies
shall, in "consultation with and with the assistance of the
Secretary," insure that any actions they authorize, fund or
carry out "[are] not likely to jeopardize the continued
existence" of any threatened or endangered species. 16 U.S.C.
1536(a)(2). Pursuant to 50 C.F.R. Part 402, the
requirements of 7 apply to "actions in which there is
discretionary Federal involvement or control." 50 C.F.R. 
402.03. 
 Five counts of the amended complaint relate to 7 of
the ESA. Construed broadly, Counts I and XII challenge the
adequacy of the Coast Guard's biological assessment and NMFS's
1995 and 1996 biological opinions, prepared pursuant to 
7(a)(2). Count II challenges the Coast Guard's failure to
initiate consultation under 7(a)(2) regarding its duties of
issuing Certificates of Documentation and Inspection to
vessels. Count III alleges the failure to adopt or implement
adequate conservation measures as required by 7(a)(1). Count
XX is a facial challenge to the validity of 50 C.F.R. 403.02,
which limits the applicability of 7 to discretionary actions. 
 Defendants argue that the APLMR Initiative meets the
requirements of 7(a)(1) of the ESA. The district court
concluded that Strahan had failed to demonstrate, in any
meaningful sense, specific measures that are necessary to
prevent the loss of endangered species of whales that are
missing from the APLMR. The district court further concluded
that, in any event, the ESA does not mandate particular actions
to be taken by federal agencies to implement 7(a)(1). On
appeal, Strahan makes no sustained argument that either of
these conclusions is in error. Indeed, he makes no effort to
explain in any detail why he thinks that the APLMR Initiative
is inadequate. Rather, he makes conclusory suggestions,
scattered throughout his brief, to the effect that nothing has
changed and that, with the dismissal of his claims, it is back
to "business as usual." Under the circumstances, we see no
reason to set the district court's conclusions aside.
 Strahan's arguments directed at the process and end
result of the 7(a)(2) consultation--and, in particular, the
Coast Guard's biological assessment and NMFS's biological
opinions--are similarly deficient. Without attempting to
address each of his arguments, we note that, although he
contends that the reasonable and prudent alternatives in the
1996 biological opinion are inadequate to "eliminate" jeopardy,
he does not identify any specific measure that is lacking. 
Moreover, a reviewing court cannot substitute its own
scientific judgment in place of the agency's judgment. In the
absence of any meaningful challenge to the decision making
process, or some reason to think that there has been a clear
error of judgment, the court must defer to the agency's
decision. Cf. Marsh v. Oregon Natural Resources Council, 490
U.S. 360, 378 (1989) ("[A]n agency must have discretion to rely
on the reasonable opinions of its own qualified experts . . .
"); Citizens Awareness Network, Inc. v. United States Nuclear
Regulatory Comm'n, 59 F.3d 284, 290 (1st Cir. 1995) (observing
that deference is especially marked in technical or scientific
matters within the agency area of expertise).
 Finally, pursuant to 50 C.F.R. 402.03, the
requirements of 7 do not apply to the Coast Guard's
documentation and inspection duties. As the district court
explained, the Coast Guard is required to issue Certificates of
Documentation and Inspection if certain statutory criteria are
met, none of which reference environmental concerns. If the
statutory criteria are met, the Coast Guard has no discretion
to deny a certificate (or to impose additional requirements
directed at the protection of endangered species). Although
Strahan renews his facial challenge to the validity of 
402.03, he makes no argument that the district court erred in
ruling that this challenge is time-barred. Under the
circumstances, his challenge must fail. Cf. Murrell v.
Shalala, 43 F.3d 1388, 1389-90 (10th Cir. 1994) (stating that
where plaintiff failed to address alternative independent
finding that was, by itself, a sufficient basis for the denial
of benefits, his success on appeal was foreclosed). 
 IV. The Anti-taking Provisions 
 Section 9 of the ESA prohibits the taking of
endangered species. See 16 U.S.C. 1538(a)(1). "Taking" is
broadly defined and includes killing, wounding, pursuing,
harassing or harming. 16 U.S.C. 1532(19). Section 102 of 
the MMPA prohibits the taking of marine mammals. 16 U.S.C. 
1372(a). Under the MMPA, "taking" includes harassing, hunting,
capturing, or killing. See 16 U.S.C. 1362(13). Counts IX
and X of the amended complaint allege, respectively, that the
Coast Guard is violating these anti-taking provisions of the
ESA and the MMPA. The complaint alleges that the Coast Guard
is liable for takings by its own vessels, as well as for
takings by non-Coast Guard vessels to which it has issued a
Certificate of Documentation.
 It is undisputed that, prior to the adoption of the
APLMR Initiative, Coast Guard vessels struck and killed two
Northern Right whales and struck a (suspected) Humpback whale. 
It is also undisputed that these incidents constitute takings
in violation of the ESA and MMPA. Although Strahan sought a
declaratory judgment to this effect, the district court found
that such relief would be supererogatory in light of the Coast
Guard's admissions. Strahan does not challenge this
conclusion. Rather, he contends that injunctive relief is
necessary to prevent future takings, and that the district
court erred in concluding that the protective measures
suggested by NMFS in its 1996 biological opinion and adopted by
the Coast Guard in its APLMR Initiative warrant the grant of
summary judgment in the Coast Guard's favor.
 We agree with the district court that the measures
adopted by the Coast Guard in its APLMR Initiative cover most
of the substance of specific measures proposed by Strahan in
his amended complaint. To the extent that the proposed
measures differ (and the district court highlighted the fact
that Strahan's proposed speed guidance differs somewhat from
that adopted by the Coast Guard), the district court
appropriately deferred to agency expertise. NMFS concluded
that the reasonable and prudent alternatives, if implemented,
would reduce the risk of Coast Guard striking whales to the
maximum extent possible. NMFS explicitly approved the Coast
Guard's speed guidance, and that decision was not "arbitrary
and capricious." Under the circumstances, we think that the
district court correctly found that Strahan failed to support
a case for further injunctive relief.
 Finally, we reject Strahan's argument that the Coast
Guard is liable for takings by non-Coast Guard vessels that it
permits to operate. The Coast Guard's issuance of Certificates
of Documentation and Inspection is analogous to the licensure
of automobiles and drivers. The vessel owner or operator is an
independent actor who is, himself, responsible for complying
with environmental and other laws. Accordingly, by issuing the
necessary permits to operate, the Coast Guard does not subject
itself to liability for crimes, including takings, that actor
may commit. Cf. Strahan v. Coxe, 127 F.3d 155, 163-64 (1st
Cir. 1997) (contrasting the state's licensure of commercial
fishing operations to use gillnets and lobster pots in a
specific manner with its licensure of automobiles and drivers). 
 V. Recovery Plans
 Section 4(f) of the ESA provides that "[t]he
Secretary [of Commerce] shall develop and implement plans . .
. for the conservation and survival of endangered species and
threatened species . . . , unless he finds that such a plan
will not promote the conservation of the species." 16 U.S.C.
 1533(f). Section 115(b) of the MMPA requires the Secretary
of Commerce to prepare conservation plans "as soon as possible"
for depleted species, unless he determines that such a plan
will not promote the conservation of the species. 16 U.S.C. 
1383b(b)(1)(C). Conservation plans under the MMPA are required
to be modeled on recovery plans prepared under the ESA. See16 U.S.C. 1383b(b)(2). NMFS has completed recovery plans for
the Northern Right whale and the Humpback whale, but not the
other endangered species of whales at issue here (namely, the
Blue, Sei, and Fin whales). 
 Two counts of the amended complaint relate to the
duty of NMFS to prepare recovery and conservation plans. Count
XIII challenges the adequacy of NMFS's Northern Right Whale
Recovery Plan. Count XIV challenges NMFS's failure "to prepare
conservation plans for the Federally Protected Whales."
 Strahan does not renew many of the specific
challenges he urged below to the methodology and content of the
Northern Right Whale Recovery Plan. Rather, he makes vague
criticisms to the effect that the district court erred in
finding that the plan is "unreviewable." He suggests that the
plan is "arbitrary and capricious" because it sets an [interim]
goal--increasing the population of Northern Right whales to
6,000--that cannot "be reached . . . within the next two
centuries." He also contends that the district court "erred
when it found that NMFS had met the requirement for site-
specific management plans by the mere recognition by it of
whales in the Atlantic and Pacific oceans." 
 We reject these challenges to the Northern Right
Whale Recovery plan essentially for the reasons stated by the
district court. Nothing in 4(f) mandates that a recovery
plan set short-term, interim goals, and the goal of 6,000 is
rationally connected with the goal of down-grading the Northern
Right whale from an endangered to a threatened species. 
Moreover, the Northern Right Whale Recovery Plan does not
simply "recognize" that there are Northern Right Whales in the
Atlantic and Pacific oceans. Rather, it devotes separate
chapters to the two populations. In addition, the district
court correctly found that the plan addresses different
habitats of Northern Right whales at different times of the
year and contains measures specifically directed at each
habitat.
 Strahan also argues that the district court erred
"when it allowed NMFS to take as long as it want[s] to develop
recovery plans for other listed species of whales." However,
Strahan makes no developed challenge to the lower court's
reasoning. Under the circumstance, his challenge must fail. 
 VI. Law Enforcement
 Four counts of the amended complaint relate to shared
duties of the Coast Guard and NMFS to enforce the requirements
of the ESA and the MMPA. Counts VI and XII allege,
respectively, that the Coast Guard and NMFS have failed in
their duties to enforce the ESA. Counts VII and XXI allege,
respectively, that the Coast Guard and NMFS have failed in
their duties to enforce the MMPA. The district court granted
summary judgment on these claims after concluding that Strahan
had failed to introduce sufficient evidence to overcome the
presumption of unreviewability of agency decisions not to
enforce. See generally Heckler v. Chaney, 470 U.S. 821 (1985). 
The court also found, among other things, that "[t]he Coast
Guard recently has increased its efforts to enforce the ESA"
and that "the record demonstrates that NMFS does enforce the
ESA and the MMPA with some degree of vigor."
 On appeal, Strahan makes no argument directed at the
latter conclusions. Rather, he challenges the "presumption of
unreviewability." He contends that review of enforcement by
the Coast Guard and NMFS is available because (1) an
enforcement policy is a "mandated" feature of a conservation
"plan" [developed under 7(a)(1) of the ESA] or a recovery
plan [developed under 4(f) of the ESA]; and (2) that these
plans are themselves subject to review. This argument is
waived for failure to present it in the district court. We 
add that, without expressing any opinions as to whether an
enforcement policy is a required feature of such plans, both
the Coast Guard's APLMR Initiative and NMFS's Northern Right
Whale Recovery Plan express a commitment to vigorous
enforcement of environmental laws.
 VII. NEPA
 In Count IV of the amended complaint, Strahan alleges
that the Coast Guard has failed to comply with its duties under
 102(2)(c) of NEPA, 42 U.S.C. 4332(2)(C), to prepare an
environmental impact statement regarding Coast Guard vessel
operations and Coast Guard documentation and inspection
activities. The district court concluded in its May 2, 1995
order that the Coast Guard's documentation and inspection of
individual vessels are not subject to NEPA. The Coast Guard
subsequently completed a final environmental impact statement
for its own vessel operations.
 Strahan challenges the district court's conclusion
that the Coast Guard's documentation and inspection of
individual vessels is not subject to NEPA. We agree with the
district court. NEPA is inapplicable because, in issuing
Certificates of Documentation and Inspection, the Coast Guard
has no discretion to consider environmental factors. See Milo
Community Hospital v. Weinberger, 525 F.2d 144, 147-148 (1st
Cir. 1975) (holding that the Secretary of HEW was not required
to file an EIS when decertifying a hospital for non-compliance
with safety code because he had a statutory duty to close the
hospital and no discretion to take environmental factors into
consideration); see also Sierra Club v. Babbit, 65 F.3d 1502,
1512 (9th Cir. 1995) (collecting cases demonstrating that
nondiscretionary agency action is excused from the operation 
of NEPA).
 VIII. Conclusion
 We have carefully considered the other arguments
raised by Strahan in his brief and reject them as
insufficiently developed or otherwise lacking in merit. 
Accordingly, the grant of judgment in favor of defendants is
affirmed.