USCA1 Opinion

 

 [NOT FOR PUBLICATION--NOT TO BE CITED AS PRECEDENT]
 United States Court of Appeals
 For the First Circuit

No. 97-1787

 RICHARD MAX STRAHAN,

 Plaintiff, Appellant,

 v.

 JOHN L. LINNON, ET AL.,

 Defendants, Appellees.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Douglas P. Woodlock, U.S. District Judge]

 Before

 Selya, Boudin and Stahl,
 Circuit Judges.
 
 

 Richard Max Strahan on brief pro se.
 Lois J. Schiffer, Assistant Attorney General, James C.
Kilbourne, David C. Shilton, Samuel D. Rauch and Mark R. Haag,
Attorneys, Department of Justice.

July 16, 1998

 
 

 Per Curiam. Richard Max Strahan appeals from the
 grant of summary judgment in favor of federal defendants on his
 claims alleging violations of the Endangered Species Act
 ("ESA"), the Marine Mammal Protection Act ("MMPA"), and the
 National Environmental Policy Act ("NEPA"). We affirm.
 I. Background
 On June 7, 1994, Strahan filed a pro se complaint
 against the Coast Guard alleging violations of the ESA, the
 MMPA, NEPA, and the Whaling Convention Act ("WCA"). Strahan
 moved for a preliminary injunction, and the Coast Guard cross-
 moved for summary judgment in its favor. By decision dated May
 2, 1995, the district court granted the Coast Guard's motion
 for summary judgment, in part. However, the district court
 concluded that, given the Coast Guard's "dilatoriness and
 neglect in initiating mandated procedures," Strahan was
 entitled to a preliminary injunction directing the Coast Guard
 to fulfill certain procedural requirements of the ESA, the
 MMPA, and NEPA.
 During this same period, the Coast Guard initiated
 formal consultation with the National Marine Fisheries Service
 ("NMFS") regarding its vessel operations along the Atlantic
 Coast. On August 1, 1995, the Coast Guard submitted a final
 (ESA) biological assessment to NMFS. On September 15, 1995,
 NMFS issued a biological opinion concluding that Coast Guard
 Atlantic activities did not jeopardize the continued existence
 of protected marine species. On September 22, 1995, the Coast
 Guard published a (NEPA) environmental assessment and a
 proposed finding of no significant impact. During the months
 that followed, several commentators urged the Coast Guard to
 prepare an environmental impact statement and to consider
 additional protective measures. In addition, on October 9,
 1995, the Coast Guard struck a (suspected) Humpback whale. On
 February 22, 1996, the Coast Guard re-initiated consultation
 with NMFS.
 On June 21, 1996, Strahan, now represented by
 counsel, filed a twenty-three count amended complaint. The
 amended complaint added defendants Secretary of Commerce, the
 National Oceanic and Atmospheric Administration, and NMFS.
 On July 22, 1996, NMFS issued a second biological
 opinion. Based on new information that indicated a possible
 decline in the population of Northern Right whales, and taking
 into account cumulative effects, NMFS concluded that Coast
 Guard operations were likely to jeopardize the continued
 existence of Northern Right whales. Accordingly, it
 recommended reasonable and prudent alternatives, which would
 "significantly reduce[] the Coast Guard's potential to cause
 injury or mortality to a right whale, and therefore, avoid the
 likelihood of jeopardizing the continued existence of right
 whales." NMFS did not alter its earlier conclusion that Coast
 Guard activities were not likely to jeopardize other protected
 species.
 On October 31, 1996, the Coast Guard published a
 final environmental impact statement which proposed the
 Atlantic Protected Living Marine Resources ("APLMR")
 Initiative. The APLMR Initiative essentially adopted and
 expanded on measures recommended in the NMFS's 1996 biological
 opinion. On December 9, 1996, the Coast Guard issued a Record
 of Decision announcing its intent to implement the APLMR 
 Initiative. 
 On March 7, 1997, defendants moved for summary
 judgment. Strahan cross-moved for partial summary judgment. 
 By order dated May 20, 1997, the district court granted full
 summary judgment in favor of defendants. This pro se appeal
 followed. Of the twenty-three counts in the amended complaint,
 Strahan makes an argument with respect to--or at least
 mentions--only fourteen of these counts on appeal (namely,
 Counts I, II, III, IV, VI, VII, IX, X, XII, XIII, XIV, XX, XXI,
 XXII).
 
 II. The Standard of Review 
 A constant theme throughout Strahan's brief, but most
 strenuously argued in his introductory section, is that the
 district court erred in applying a deferential standard of
 review. He contends that as "past violators" of the provisions
 of the ESA and the MMPA, neither the Coast Guard nor NMFS is
 entitled to any deference. He also suggests that the district
 court extended deference to the federal agencies involved to
 the "point of gullibility." We disagree. 
 Contrary to Strahan's suggestion, the appropriate
 scope of review of federal agency action under the ESA, the
 MMPA, and NEPA is the standard set forth under the
 Administrative Procedure Act, 5 U.S.C. 706(2)(A). See,
 e.g., Dubois v. United States Dep't of Agric., 102 F.3d 1273,
 1284 (1st Cir. 1996) (NEPA), cert. denied, 117 S. Ct. 2510
 (1997); Sierra Club v. Glickman, 67 F.3d 90, 95-96 (5th Cir.
 1995) (ESA). Under this standard, an agency decision may not
 be set aside unless found to be "arbitrary, capricious, an
 abuse of discretion, or otherwise not in accordance with law." 
 5 U.S.C. 706(2)(A). When reviewing agency action, we apply
 the same legal standards that pertain in the district court. 
 See Associated Fisheries of Maine, Inc. v. Daley, 127 F.3d 104,
 109 (1st Cir. 1997).
 
 III. Jeopardy and the Duty to Conserve
 Section 7 of the ESA, titled "Interagency
 Cooperation," places two responsibilities on federal agencies. 
 Section 7(a)(1) provides that all agencies shall, "in
 consultation with and with the assistance of the Secretary,"
 utilize their authorities in furtherance of the purposes of the
 ESA by carrying out programs for the conservation of endangered
 species and threatened species. 16 U.S.C. 1536(a)(1). 
 Section 7(a)(2) of the ESA requires that all federal agencies
 shall, in "consultation with and with the assistance of the
 Secretary," insure that any actions they authorize, fund or
 carry out "[are] not likely to jeopardize the continued
 existence" of any threatened or endangered species. 16 U.S.C.
 1536(a)(2). Pursuant to 50 C.F.R. Part 402, the
 requirements of 7 apply to "actions in which there is
 discretionary Federal involvement or control." 50 C.F.R. 
 402.03. 
 Five counts of the amended complaint relate to 7 of
 the ESA. Construed broadly, Counts I and XII challenge the
 adequacy of the Coast Guard's biological assessment and NMFS's
 1995 and 1996 biological opinions, prepared pursuant to 
 7(a)(2). Count II challenges the Coast Guard's failure to
 initiate consultation under 7(a)(2) regarding its duties of
 issuing Certificates of Documentation and Inspection to
 vessels. Count III alleges the failure to adopt or implement
 adequate conservation measures as required by 7(a)(1). Count
 XX is a facial challenge to the validity of 50 C.F.R. 403.02,
 which limits the applicability of 7 to discretionary actions. 
 Defendants argue that the APLMR Initiative meets the
 requirements of 7(a)(1) of the ESA. The district court
 concluded that Strahan had failed to demonstrate, in any
 meaningful sense, specific measures that are necessary to
 prevent the loss of endangered species of whales that are
 missing from the APLMR. The district court further concluded
 that, in any event, the ESA does not mandate particular actions
 to be taken by federal agencies to implement 7(a)(1). On
 appeal, Strahan makes no sustained argument that either of
 these conclusions is in error. Indeed, he makes no effort to
 explain in any detail why he thinks that the APLMR Initiative
 is inadequate. Rather, he makes conclusory suggestions,
 scattered throughout his brief, to the effect that nothing has
 changed and that, with the dismissal of his claims, it is back
 to "business as usual." Under the circumstances, we see no
 reason to set the district court's conclusions aside.
 Strahan's arguments directed at the process and end
 result of the 7(a)(2) consultation--and, in particular, the
 Coast Guard's biological assessment and NMFS's biological
 opinions--are similarly deficient. Without attempting to
 address each of his arguments, we note that, although he
 contends that the reasonable and prudent alternatives in the
 1996 biological opinion are inadequate to "eliminate" jeopardy,
 he does not identify any specific measure that is lacking. 
 Moreover, a reviewing court cannot substitute its own
 scientific judgment in place of the agency's judgment. In the
 absence of any meaningful challenge to the decision making
 process, or some reason to think that there has been a clear
 error of judgment, the court must defer to the agency's
 decision. Cf. Marsh v. Oregon Natural Resources Council, 490
 U.S. 360, 378 (1989) ("[A]n agency must have discretion to rely
 on the reasonable opinions of its own qualified experts . . .
 "); Citizens Awareness Network, Inc. v. United States Nuclear
 Regulatory Comm'n, 59 F.3d 284, 290 (1st Cir. 1995) (observing
 that deference is especially marked in technical or scientific
 matters within the agency area of expertise).
 Finally, pursuant to 50 C.F.R. 402.03, the
 requirements of 7 do not apply to the Coast Guard's
 documentation and inspection duties. As the district court
 explained, the Coast Guard is required to issue Certificates of
 Documentation and Inspection if certain statutory criteria are
 met, none of which reference environmental concerns. If the
 statutory criteria are met, the Coast Guard has no discretion
 to deny a certificate (or to impose additional requirements
 directed at the protection of endangered species). Although
 Strahan renews his facial challenge to the validity of 
 402.03, he makes no argument that the district court erred in
 ruling that this challenge is time-barred. Under the
 circumstances, his challenge must fail. Cf. Murrell v.
 Shalala, 43 F.3d 1388, 1389-90 (10th Cir. 1994) (stating that
 where plaintiff failed to address alternative independent
 finding that was, by itself, a sufficient basis for the denial
 of benefits, his success on appeal was foreclosed). 
 IV. The Anti-taking Provisions 
 Section 9 of the ESA prohibits the taking of
 endangered species. See 16 U.S.C. 1538(a)(1). "Taking" is
 broadly defined and includes killing, wounding, pursuing,
 harassing or harming. 16 U.S.C. 1532(19). Section 102 of 
 the MMPA prohibits the taking of marine mammals. 16 U.S.C. 
 1372(a). Under the MMPA, "taking" includes harassing, hunting,
 capturing, or killing. See 16 U.S.C. 1362(13). Counts IX
 and X of the amended complaint allege, respectively, that the
 Coast Guard is violating these anti-taking provisions of the
 ESA and the MMPA. The complaint alleges that the Coast Guard
 is liable for takings by its own vessels, as well as for
 takings by non-Coast Guard vessels to which it has issued a
 Certificate of Documentation.
 It is undisputed that, prior to the adoption of the
 APLMR Initiative, Coast Guard vessels struck and killed two
 Northern Right whales and struck a (suspected) Humpback whale. 
 It is also undisputed that these incidents constitute takings
 in violation of the ESA and MMPA. Although Strahan sought a
 declaratory judgment to this effect, the district court found
 that such relief would be supererogatory in light of the Coast
 Guard's admissions. Strahan does not challenge this
 conclusion. Rather, he contends that injunctive relief is
 necessary to prevent future takings, and that the district
 court erred in concluding that the protective measures
 suggested by NMFS in its 1996 biological opinion and adopted by
 the Coast Guard in its APLMR Initiative warrant the grant of
 summary judgment in the Coast Guard's favor.
 We agree with the district court that the measures
 adopted by the Coast Guard in its APLMR Initiative cover most
 of the substance of specific measures proposed by Strahan in
 his amended complaint. To the extent that the proposed
 measures differ (and the district court highlighted the fact
 that Strahan's proposed speed guidance differs somewhat from
 that adopted by the Coast Guard), the district court
 appropriately deferred to agency expertise. NMFS concluded
 that the reasonable and prudent alternatives, if implemented,
 would reduce the risk of Coast Guard striking whales to the
 maximum extent possible. NMFS explicitly approved the Coast
 Guard's speed guidance, and that decision was not "arbitrary
 and capricious." Under the circumstances, we think that the
 district court correctly found that Strahan failed to support
 a case for further injunctive relief.
 Finally, we reject Strahan's argument that the Coast
 Guard is liable for takings by non-Coast Guard vessels that it
 permits to operate. The Coast Guard's issuance of Certificates
 of Documentation and Inspection is analogous to the licensure
 of automobiles and drivers. The vessel owner or operator is an
 independent actor who is, himself, responsible for complying
 with environmental and other laws. Accordingly, by issuing the
 necessary permits to operate, the Coast Guard does not subject
 itself to liability for crimes, including takings, that actor
 may commit. Cf. Strahan v. Coxe, 127 F.3d 155, 163-64 (1st
 Cir. 1997) (contrasting the state's licensure of commercial
 fishing operations to use gillnets and lobster pots in a
 specific manner with its licensure of automobiles and drivers). 
 V. Recovery Plans
 Section 4(f) of the ESA provides that "[t]he
 Secretary [of Commerce] shall develop and implement plans . .
 . for the conservation and survival of endangered species and
 threatened species . . . , unless he finds that such a plan
 will not promote the conservation of the species." 16 U.S.C.
 1533(f). Section 115(b) of the MMPA requires the Secretary
 of Commerce to prepare conservation plans "as soon as possible"
 for depleted species, unless he determines that such a plan
 will not promote the conservation of the species. 16 U.S.C. 
 1383b(b)(1)(C). Conservation plans under the MMPA are required
 to be modeled on recovery plans prepared under the ESA. See16 U.S.C. 1383b(b)(2). NMFS has completed recovery plans for
 the Northern Right whale and the Humpback whale, but not the
 other endangered species of whales at issue here (namely, the
 Blue, Sei, and Fin whales). 
 Two counts of the amended complaint relate to the
 duty of NMFS to prepare recovery and conservation plans. Count
 XIII challenges the adequacy of NMFS's Northern Right Whale
 Recovery Plan. Count XIV challenges NMFS's failure "to prepare
 conservation plans for the Federally Protected Whales."
 Strahan does not renew many of the specific
 challenges he urged below to the methodology and content of the
 Northern Right Whale Recovery Plan. Rather, he makes vague
 criticisms to the effect that the district court erred in
 finding that the plan is "unreviewable." He suggests that the
 plan is "arbitrary and capricious" because it sets an [interim]
 goal--increasing the population of Northern Right whales to
 6,000--that cannot "be reached . . . within the next two
 centuries." He also contends that the district court "erred
 when it found that NMFS had met the requirement for site-
 specific management plans by the mere recognition by it of
 whales in the Atlantic and Pacific oceans." 
 We reject these challenges to the Northern Right
 Whale Recovery plan essentially for the reasons stated by the
 district court. Nothing in 4(f) mandates that a recovery
 plan set short-term, interim goals, and the goal of 6,000 is
 rationally connected with the goal of down-grading the Northern
 Right whale from an endangered to a threatened species. 
 Moreover, the Northern Right Whale Recovery Plan does not
 simply "recognize" that there are Northern Right Whales in the
 Atlantic and Pacific oceans. Rather, it devotes separate
 chapters to the two populations. In addition, the district
 court correctly found that the plan addresses different
 habitats of Northern Right whales at different times of the
 year and contains measures specifically directed at each
 habitat.
 Strahan also argues that the district court erred
 "when it allowed NMFS to take as long as it want[s] to develop
 recovery plans for other listed species of whales." However,
 Strahan makes no developed challenge to the lower court's
 reasoning. Under the circumstance, his challenge must fail. 
 VI. Law Enforcement
 Four counts of the amended complaint relate to shared
 duties of the Coast Guard and NMFS to enforce the requirements
 of the ESA and the MMPA. Counts VI and XII allege,
 respectively, that the Coast Guard and NMFS have failed in
 their duties to enforce the ESA. Counts VII and XXI allege,
 respectively, that the Coast Guard and NMFS have failed in
 their duties to enforce the MMPA. The district court granted
 summary judgment on these claims after concluding that Strahan
 had failed to introduce sufficient evidence to overcome the
 presumption of unreviewability of agency decisions not to
 enforce. See generally Heckler v. Chaney, 470 U.S. 821 (1985). 
 The court also found, among other things, that "[t]he Coast
 Guard recently has increased its efforts to enforce the ESA"
 and that "the record demonstrates that NMFS does enforce the
 ESA and the MMPA with some degree of vigor."
 On appeal, Strahan makes no argument directed at the
 latter conclusions. Rather, he challenges the "presumption of
 unreviewability." He contends that review of enforcement by
 the Coast Guard and NMFS is available because (1) an
 enforcement policy is a "mandated" feature of a conservation
 "plan" [developed under 7(a)(1) of the ESA] or a recovery
 plan [developed under 4(f) of the ESA]; and (2) that these
 plans are themselves subject to review. This argument is
 waived for failure to present it in the district court. We 
 add that, without expressing any opinions as to whether an
 enforcement policy is a required feature of such plans, both
 the Coast Guard's APLMR Initiative and NMFS's Northern Right
 Whale Recovery Plan express a commitment to vigorous
 enforcement of environmental laws.
 VII. NEPA
 In Count IV of the amended complaint, Strahan alleges
 that the Coast Guard has failed to comply with its duties under
 102(2)(c) of NEPA, 42 U.S.C. 4332(2)(C), to prepare an
 environmental impact statement regarding Coast Guard vessel
 operations and Coast Guard documentation and inspection
 activities. The district court concluded in its May 2, 1995
 order that the Coast Guard's documentation and inspection of
 individual vessels are not subject to NEPA. The Coast Guard
 subsequently completed a final environmental impact statement
 for its own vessel operations.
 Strahan challenges the district court's conclusion
 that the Coast Guard's documentation and inspection of
 individual vessels is not subject to NEPA. We agree with the
 district court. NEPA is inapplicable because, in issuing
 Certificates of Documentation and Inspection, the Coast Guard
 has no discretion to consider environmental factors. See Milo
 Community Hospital v. Weinberger, 525 F.2d 144, 147-148 (1st
 Cir. 1975) (holding that the Secretary of HEW was not required
 to file an EIS when decertifying a hospital for non-compliance
 with safety code because he had a statutory duty to close the
 hospital and no discretion to take environmental factors into
 consideration); see also Sierra Club v. Babbit, 65 F.3d 1502,
 1512 (9th Cir. 1995) (collecting cases demonstrating that
 nondiscretionary agency action is excused from the operation 
 of NEPA).
 VIII. Conclusion
 We have carefully considered the other arguments
 raised by Strahan in his brief and reject them as
 insufficiently developed or otherwise lacking in merit. 
 Accordingly, the grant of judgment in favor of defendants is
 affirmed.